James Lee **LITTLE**, Appellant,

v.

John W. **TURNER**, Warden, Utah State Prison, Appellee.

No. 9883.

United States Court of Appeals Tenth Circuit.

Oct. 24, 1968.

---

Galen Ross, Salt Lake City, Utah, for appellant.

LeRoy S. Axland, Asst. Atty. Gen., (Phil L. Hansen, Atty. Gen., on brief), for appellee.

Before LEWIS, SETH and HICKEY, Circuit Judges.

DAVID T. LEWIS, Circuit Judge.

This is an appeal from an order of the District Court for the District of Utah denying appellant's petition for a writ of habeas corpus. Petitioner Little is an indigent state prisoner presently serving a sentence imposed after conviction by a jury of the crime of robbery. The case presents a significant constitutional inquiry as to whether Little has been denied due process or the equal protection of law under the facts of the case as applied to Utah statutory criminal procedure. The district court phrased the inquiry thus:

> "Whether the defendant was denied due process or the equal protection of the laws by the interpositioning of some financial consideration between him and a significant aid to his defense or the effective examination of a witness on his behalf."

On March 20, 1965, Little entered the office of a psychiatrist in Salt Lake City, Utah, stated that he needed medical aid and narcotics, and, receiving neither, then robbed the doctor. Little was captured almost immediately and was charged with larceny and robbery. He entered a plea of not guilty by reason of insanity. After entry of such plea, upon petition of the state district attorney, the state court ordered and conducted a pre-trial sanity hearing as contemplated by 77–48–2 to 77–48–6, Utah Code Annotated 1953, as amended by L. Utah, 1955. Pursuant to such statutory authority, two disinterested court-appointed physicians, Drs. Dangerfield and Montgomery, testified as to Little's mental condition. The witnesses were examined by the district attorney and by the public legal defender, the latter at such time representing Little who was personally present. The proceedings were recorded by a court reporter. Based upon the testimony of the doctors, the state court found Little then to be "legally insane" and "not able to cooperate in his defense," and committed him to the state hospital for an indefinite period.

On August 20, 1965, after physicians of the state hospital staff certified to the state committing court that Little was mentally competent to stand trial, Little was returned to police custody and the case set for trial. Little, still an indigent but now represented by different counsel continuing his defense of insanity, moved the trial court for orders requiring the appearance of certain named witnesses, including Drs. Dangerfield and Montgomery, to be subpoenaed at state expense and also moved that the state be required to furnish a free transcript of the pre-trial sanity hearing proceedings. The trial court granted the motion to subpoena and denied the motion for the transcript. Dr. Dangerfield testified at the trial; Dr. Montgomery did not, being unavailable. The refusal to furnish the requested transcript is the basis of claim to denial of a constitutional right.

After Little's conviction of both the crimes of larceny and robbery, appeal was taken to the Supreme Court of Utah. That high court set aside the verdict and sentence for larceny as an included offense in the crime of robbery but otherwise affirmed. State v. Little, 19 Utah 2d 53, 426 P.2d 4. Considering the question of the pre-trial transcript of the sanity hearing, the Utah Supreme Court stated:

> "Two days prior to the trial the defendant had filed a motion requesting that he be furnished a copy of the

transcript of the hearing pertaining to his insanity and which resulted in his being committed to the Utah State Hospital. This motion was not ruled by the court. The record does not disclose that this matter was called to the court's attention or that the court was requested to rule upon the defendant's motion. It appears that this matter is being raised for the first time on appeal. This is not a matter which the defendant can raise for the first time in this Court. In any event, it does not appear that the failure to grant the motion in the court below in any way affected the defendant's right to a fair trial. The defendant was not precluded from submitting his defense of insanity during the trial, and that matter was properly submitted to the jury and it does not appear that the transcript would have assisted the defendant in that matter."

■ A subsequent application for a writ of habeas corpus was summarily denied by the Utah Supreme Court and this federal proceeding followed. Pursuant to its duty under petitions filed under 28 U.S.C. § 2254, the court examined the state records to determine if the state proceedings could summarily be found to have support in law and fact. Maes v. Patterson, 10 Cir., filed October 2, 1968, 401 F.2d 200. Finding in the state record that the state trial court had denied the motion for the subject transcript and that consequently the question was not, as stated in the opinion of the Utah Supreme Court, raised for the first time on appeal, the district court ordered an evidentiary hearing.

The only witness to testify at the hearing was Mr. Robert L. Lord, Little's trial attorney. He testified that in his opinion the results of his examination of Dr. Dangerfield at the trial would have been different if the transcript of the doctor's earlier testimony had been available to the defense. Such testimony is a definite refutation of the statement in the state opinion that the transcript would not have assisted the defendant in the matter.

The federal district court denied the subject application for relief after a very careful consideration of the total case and expressed multiple reasons for so doing. That court concluded that there was no inherent constitutional defect involved, that the furnishing of the subject transcript was a discretionary matter and that no good cause for its production had been shown, and that denial of the motion was harmless "beyond a reasonable doubt." We cannot agree.

■ Neither the Utah Supreme Court nor the federal district court doubted the power of the state trial court to supply the subject transcript at state expense under the applicable Utah statutes.[1] We have been recently and emphatically reminded by the Supreme Court, per curiam in Roberts v. La-

---

1. "78-56-8. In a case where a transcript has been ordered by the court the fees for transcribing must be paid by the respective parties to the action or proceeding in equal proportion, or by such of them and in such proportion as the court in its discretion may order. * .* * The party ordering the reporter to transcribe any portion of the evidence or proceedings must pay the fees therefor to the reporter. If the defendant in a criminal case desires to have the reporter transcribe his notes taken on the trial, he must pay the reporter's fees therefor, or deposit a sum equivalent thereto with the clerk of the court; provided, that if it appears by affidavit, made by the defendant in person, that he is impe-

cunious and unable to pay the reporter's fees for transcribing his notes and that a transcript of the same is necessary in an appeal on behalf of the defendant, and said facts are not successfully controverted, the court may order the reporter to transcribe his notes, or so much thereof as the court may deem necessary, at the expense of the state. In criminal cases when the proceedings have been transcribed upon the order of the court, the fees of the reporter shall be certified by the judge to the state auditor, who shall draw his warrant upon the state treasurer for the amount so certified, and the same shall be paid out of the state treasury."

Vallee, 389 U.S. 40, 88 S.Ct. 194, 19 L. Ed.2d 41, that the denial of a preliminary hearing transcript to an indigent does involve, inherently, a constitutional question and that:

"Our [their] decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution. See e.g., Draper v. [State of] Washington, 372 U.S. 487 [83 S.Ct. 774, 9 L.Ed.2d 899] (1963); Griffin v. [People of State of] Illinois, 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055] (1956). Only last Term, in Long v. District Court of Iowa, 385 U.S. 192 [87 S.Ct. 362, 17 L.Ed.2d 290] (1966), we reiterated the statement first made in Smith v. Bennett, 365 U.S. 708, 709 [81 S.Ct. 895, 896, 6 L.Ed.2d 39] (1961), that 'to interpose any financial consideration between an indigent prisoner of the state and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.' "

■■■ The situation considered in *Roberts* can in some ways be distinguished from the procedural and factual background of the case at bar. *Roberts* was considered in view of an admittedly unconstitutional state statute; here the Utah statute is manifestly valid. But the Constitution requires not only proper words but the equal and fair application of those words. Assuming, arguendo, that a state may vest in its courts some degree of discretion in furnishing to an indigent defendant certain of the many types of transcripts possible to exist under varying criminal procedures in the several states, such generality has no application under the circumstances of this case. Defense counsel had not participated in the first sanity hearing and could premise his demand for the transcript no more specifically than upon a belief that it was necessary for the proper preparation of a defense. This he did. The state judge who denied the request had not participated in the first sanity hearing, had nothing before him upon which to base a discretionary ruling, and thus ruled with absolutism. The result was to place a financial barrier between the defendant and a transcript that was available to the state. We think it a necessary corollary of *Roberts* that the ruling was discriminatory.

■■■ In *Roberts* the transcript of the preliminary hearing was of testimony bearing directly on the commission of the crime charged; here, the transcript pertained to testimony pertinent only to a special defense. But Little's mental condition was the continuing and only disputed issue in this case and brings into clear focus that it is the need for the transcript and not the technical nature of the preliminary hearing that must be the determinative factor in applying and securing the rights of the indigent defendant. Little committed his crime on March 20, 1965, was judicially determined to be legally insane and not able to cooperate in his defense on April 27, was administratively, ex parte, determined to be competent in August, and was found, by his conviction in December, to have been sane in March. We think, here, as in *Roberts*, the circumstances justify relief without inquiry into the existence of actual prejudice to the defendant. But since both the Utah Supreme Court and the federal district court have denied relief, in the alternative, under the Utah harmless error statute [2] and the federal standard, Chapman v. State of California, 386 U.S.

2. "After hearing an appeal the court must give judgment without regard to errors or defects which do not affect the substantial rights of the parties. If error has been committed, it shall not be presumed to have resulted in prejudice. The court must be satisfied that it has that effect before it is warranted in reversing the judgment." 77–42–1, Utah Code Ann.1953.

18, 87 S.Ct. 824, 17 L.Ed.2d 705,[3] we think it appropriate to give consideration to this aspect of the case.

In holding that "it does not appear that the transcript would have assisted the defendant * * *", the Utah Supreme Court presumably compared the testimony of Dr. Dangerfield as given at the preliminary hearing with that given by the same witness at the trial. The record affirmatively shows that the federal court made such comparison. We must term such procedure to be suspect as it applies to this case for as Mr. Justice Fortas states in Dennis v. United States, 384 U.S. 855, at 874–875, 86 S. Ct. 1840, at 1851, 16 L.Ed.2d 973.

> "Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate."

 And based upon our own examination of the record we are far from satisfied that the denial of the transcript to petitioner was harmless. Dr. Dangerfield had lost his notes concerning his earlier examination of Little and could not remember distinctly the facts surrounding the sanity hearing. His testimony at the trial varied in certain respects to the testimony given by him at the sanity hearing. During the sanity hearing Dr. Dangerfield testified that "I have said in my letter to the court I feel that it is a schizophrenic reaction, parenoid type of long standing duration" and that "any thought that he [petitioner] was preoccupied with at a particular time would be more important than his indirect knowledge of right and wrong" while at the trial he testified that "[m]y opinion at the time of writing this letter was that he was psychotic

probably" and "that he was somewhat inattentive at times and I thought his emotional reactions were rather absent or minimal, and I had a question in my mind about whether or not this indicated he was indeed psychotic or not as I stated in the letter."

As we have earlier indicated, defense trial counsel stated at the evidentiary hearing that the results of his examination of Dr. Dangerfield would have been different if he had had the benefit of the subject transcript. We do not agree that the record overcomes this opinion beyond a reasonable doubt.

The judgment is reversed and the case remanded for such further proceedings as may be appropriate.

---

3. " * * * before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman, supra at p. 24, at p. 828 of 87 S.Ct.