Breitel, J.
In habeas corpus proceedings relator seeks vacatur of the judgment in 1963 convicting him of the sale and possession of narcotic drugs, on which he received concurrent sentences, the greatest of which was from 15 to 30 years. Prior to trial, he was denied a transcript for use upon the trial of the minutes of an evidence suppression hearing conducted pursuant to section 813-c of the Code of Criminal Procedure. The request was not renewed at the trial.
Relator urges that, because of his indigency, he was denied due process and the equal protection of the laws guaranteed by the Federal and .State Constitutions (U. S. Const., 14th Arndt., § 1; N. Y. Const., art. I, §§ 6,11), arguing, in part, that a criminal defendant in funds could have obtained the hearing minutes. He notes particularly that this court has accorded an *235 indigent defendant the right to a free copy of the minutes of a preliminary hearing by extension of the applicable statute (Code Crim. Pro., § 206; People v. Montgomery, 18 N Y 2d 993). He also notes that, even in the absence of a statutory right to minutes available to a criminal defendant in funds, this court has accorded an indigent defendant, on seasonable request, the right to the minutes of a prior trial or of a Grand Jury (People v. Ballott, 20 N Y 2d 600, 604; cf. People v. Jaglom, 17 N Y 2d 162). He points out that the minutes are especially important when, as occurred in this case, some of the witnesses who had testified at the suppression hearing also testified at the trial. But now possessed of the transcript, he offers only conjecture as to possible cross-examination of the police officers who testified on the trial. Moreover, the conjectures are not based upon flat contradictions as to material matters, but omissions or additions in testimony given at the suppression hearing and at the trial.
• The rules laid down in the Montgomery and Ballott cases depend upon the constitutional right to equal protection of the laws or the recognition that the availability to the defense of pretrial statements and prior testimony of prosecution witnesses is significant, and sometimes vital to the cross-examination of such witnesses, and of aid in the preparation for trial generally (People v. Rosario, 9 N Y 2d 286, 289-290; cf. People v. Malinsky, 15 N Y 2d 86, 90-91). Because the same reasons are applicable to the minutes of pretrial suppression hearings, relator contends that the Montgomery-Ballott rule should be extended to.them.
Relator argues that at the time of his 1963 motion for the transcript he was constitutionally entitled to its production. In the alternative he urges that a defendant prepared to pay for the transcript could have received it as a matter of right, and that equal protection required that he not be so deprived because of lack of funds, citing, among others, People v. Montgomery (18 N Y 2d 993, supra), (see, also, Roberts v. La Vallee, 389 U. S. 40).
Relator relies solely on People v. Rosario (supra) for his proposition that the right to transcripts of pretrial suppression hearings, at least as to defendants in funds, was already established in 1963 when the pro se motion for the transcript was *236 made. The Rosario case, however, held merely that the defense was entitled, at the trial, to the prior statements of prosecution witnesses made ‘1 to police, district attorney or grand jury ’ ’ (id., p. 289). The defense was thereby given access to ex parte statements that would otherwise remain undisclosed to him throughout the trial. The Rosario case required only that all ex parte statements made by prosecution witnesses should be made available to the defense at the trial. It did not require that the defense be afforded transcripts of testimony given in the presence of both the defendant and his counsel, or that they be made available before the trial or before the prosecution witnesses had testified.
True, the rationale for the rule was that such statements might be of significant assistance to the defense, even if not inconsistent with the trial testimony, and, of course, transcripts of testimony given in the presence of a defendant represented by counsel are also helpful in trial preparation and tactics. The Rosario doctrine was, however, not extended to cover pretrial requests for transcripts of earlier proceedings at which the defendant was present until 1967, in People v. Ballott (20 N Y 2d 600, 603-605, supra).
The issue, then, is whether the right to such transcripts suggested by the Ballott case is to be applied retroactively to relator’s case. On this issue, People v. Montgomery (supra) and Roberts v. La Vallee (supra) do not control. The Montgomery case held that the statutory right to a transcript of a preliminary hearing (Code 'Grim. Pro., § 206) could not be denied because of indigency. The Roberts case, referring to the State statute, held that the equal protection basis of the rule in the Montgomery case had long been applied by the Federal courts, so that the issue of retroactive or prospective application of the Montgomery ease was “ predetermined by established federal principles ” (389 U. p. 43).
Apart from the statutory right involved in the Montgomery and Roberts cases (supra), a further significant difference must be noted between the Montgomery and Ballott cases, and this one. Those were decided on direct appeal from the convictions. This case arises in habeas corpus in collateral attack on a final judgment determined years ago. Relator had exhausted his appellate remedies in connection with that final judgment (23 *237 A D 2d 721, mot. for lv. to app. den.). Moreover, even the Rosario case (supra) in the rationale of which the Montgomery and Ballott rules have their source, insofar as the fairness of disclosure to the defense of prior ex parte statements or testimony of prosecution witnesses is concerned, was also on direct appeal from a conviction. Similarly, People v. Malinshy (supra) was determined on a direct appeal. None of the rules in these cases has been given retroactive effect in this State in matters gone to final judgment (see, however, People v. Hernandez, 10 N Y 2d 774, and People v. Fasano, 11 N Y 2d 436, 445, applying on direct appeal a materiality or substantial prejudice test to cases tried before the Rosario case, supra).
It is becoming increasingly evident that, as the standards of fair procedure for criminal trial are being raised, every improvement does not entail constitutional rights of such magnitude as to require, through posteonviction remedies, the undoing of past judgments prosecuted to finality. Thus this court said recently in People v. De Renzzio (19 N Y 2d 45, 49):
‘ ‘ In basic conceptional theory the pronouncement of the common-law court is deemed retroactively to have been the rule of the past. A decision states the law as it ought rightly to have been understood from the beginning. But this is one of the fictions by which the common law lived; and nowhere is it more manifestly a fiction than in the area of constitutional interpretation.
“ The fact is that there was a different judicial reading of the Constitution in 1938 and in 1960 on the admissibility of a post-indictment statement. There seems no compelling policy reason why, because of a general theory of retroactivity of judicial pronouncement we must, or should, impose a subsequently developed theory of law upon a trial competently managed nearly 30 years ago.
“ We have no valid basis for assuming our predecessors were so entirely wrong and we quite so entirely right about our views that we should undo what was correctly done many years ago according to the general understanding of lawyers on how the Constitution should be read.”
In this case, relator’s conviction occurred November 19, 1963; the conviction was affirmed on March 8,1965, and leave to appeal was denied by a Judge of this court May 13, 1965. The rules *238 in the Montgomery and Ballott eases had not yet been articulated, those decisions having been rendered in 1966 and 1967 respectively. That the rules had their rational source in the long-standing constitutional mandate of equal protection and a 1961 expansion of concepts of due process fairness (People v. Rosario, supra) does not alter the fact that they were minted new, and changed practices deemed fair for a long period into the past. Unless, therefore, the new rules are shown to involve profoundly and directly the integrity of the fact-finding process in the main ease, they should not be given retroactive effect to undo judgments made final by appeal or the expiration of time to appeal.
While, as observed in the Be Renssio case (supra), the common-law doctrine was that decisional law never admitted to a change in the law but spoke as of from the beginning of time and referred to contrary past decision as error, the general doctrines up until quite recently never served to undo judgments, civil or criminal, which had gone to finality (Linkletter v. Walker, 381 U. S. 618, 622-624, 639; 1 Blackstone’s Comm. [1st ed.], p. 69; 1 Black, Judgments [2d ed.], §§ 245, 246). It has only been in the particular field of criminal law that newly declared doctrines of constitutional interpretation of provisions of the Bill of Rights have been given retroactive effect even to undoing final judgments in collateral postconviction proceedings. The reasons are plainly evident. Starting with conceptions of constitutional violations depriving the convicting court of jurisdiction (lack of jurisdiction has always 'been a basis for upsetting final judgments on the ground of nullity [see, e.g., 1 Black, op. cit., §§ '256, 257; Brannon, The Fourteenth Amendment (1901), ch. 20, esp. pp. 434-435), retroactivity extended to expanded constitutional violations regarded as grossly offending the sense of fairness and therefore due process. The supporting reasoning was always in terms of a due process violation ousting the convicting court of jurisdiction (Fay v. Noia, 372 U. S. 391, 402-405).
But, in time, with the evolution of standards of fairness in criminal procedure, it was recognized that, while it was desirable to raise constitutional standards, the price of retroactivity in its effect on the administration of criminal justice was too high, or, the high price would deter further desired improvements, *239 if total retroactivity were always extended. The response was the effort to provide standards for extending or denying retro-activity, based on the offensiveness of the precluded conduct or the effect on the reliability of the fact-finding process.
In Stovall v. Denno (388 U. S. 293); Johnson v. New Jersey (384 U. S. 719), and Lihkletter v. Walker (381 U. S. 618, supra) the Supreme Court addressed itself to the problems created by retroactivity in the administration of the criminal law, especially if extended to matters in which the appellate process had been exhausted, but also to eases on direct appeal where the trial had taken place. A parallel development occurred in this State (see, generally, People v. Kaiser, 21 NY 2d 86, 97-99; People v. Bailey, 21 N Y 2d 588, 596-598; People v. McQueen, 18 NY 2d 337; People v. Friola, 11 N Y 2d 157; People v. Loria, 10 N Y 2d 368). A reading of the relevant opinions reveals á development in the approach to retroactivity and not the constant application of a single immutable standard. The effect on the reliability of the fact-finding process has most often been determinative of providing retroactivity. But any influence on the fact-finding process, however small, is not a sufficient ground for allowing complete retroactivity in collateral postconviction remedies. If it were otherwise, then the rule in United States v. Wade (388 U. S. 218) would be entitled to full retroactivity, since the regulation of identification lineups certainly looks much more to the reliability of the fact-finding process than merely to the provision of fairness in procedure even to the guilty (compare 388 U. S., pp. 228-232 with Roberts v. Russell, 392 U. S. 293).
Certainly, as this court would now view the matter, it was desirable for relator to have had a transcript of the suppression hearing, but a principle of traditional fairness, lacking only an effective remedy in the past, is not involved. Moreover, it is only conjectural that the defense would have been aided substantially in changing the result upon the trial. Analytically, the comparison of possible effects is much like that underlying the difference between the retroactivity applied by the Supreme Court in handling coerced confessions, always wrong in our modern society, and the nonretroactivity directed to the improvement in identification lineup proceedings (compare Linkletter v. Walker, 381 U. S. 618, 638, supra, with Stovall v. Denno, 388 *240 U. S. 293, 298, supra; see, also, Roberts v. Russell, 392 U. S. 298, supra). Not without good reason did the Supreme Court say, in Johnson v. New Jersey (supra): “ Finally, we emphasize that the question whether a constitutional rule of criminal procedures does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree” (384 U. S., pp. 728-729 ).
On this view, although the Montgomery-Ballott rules must, as a matter of logic and fairness, also extend to the minutes of pretrial suppression hearings, relator is not entitled to retroactive application in postconviction proceedings for redress of the denial, years ago, to provide him, at the People’s expense, of the transcript of the suppression hearing. As already noted, in this context, it is material that relator and his first lawyer were present at the suppression hearing. Thus, there was knowledge of what occurred and an opportunity to make notes. Even under the Rosario rule {supra), where there was or could be no such presence or opportunity, there has never been complete retroactivity extended.
Of course, in a proper case where a prisoner could show that the deprivation of a transcript involved a substantial injustice because the defense could not, without the transcript, undermine a false charge or false testimony which, with the transcript, could have been done, the court would have before it a different issue. It would seem, however, that in such a case there would almost inevitably be associated with the deprivation of a transcript elements of fraud or perjury for which there is independent ground for relief in the existing postconviction remedies (see, e.g., People v. Robertson, 12 N Y 2d 355).
In this case, the issue raised involves only an improved, newly developed procedural standard, albeit having its source in a constitutional provision of long standing but of the broadest language. There is no occasion, based only on a conjectural advantage in a trial long past, and only mischief, in allowing a retroactivity to undo a final judgment.
Accordingly, the order should be affirmed.
Chief Judge Fuld and Judges Scileppi, Bergan, Keating and Jasen concur; Judge Burke taking no part.
Order affirmed.