**UNITED STATES of America ex rel. Kelly WILSON, Petitioner-Appellant,**

v.

**The Hon. Daniel McMANN, Warden, Clinton State Prison, Dannemora, N. Y., Respondent-Appellee.**

**Nos. 335, 343, Dockets 31934, 31935.**

United States Court of Appeals Second Circuit.

Argued Jan. 17, 1969.

Decided March 14, 1969.

Gretchen White Oberman, New York City, (Anthony F. Marra, New York City, on the brief), for petitioner-appellant.

Robert S. Hammer, Asst. Atty. Gen., New York City, (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, on the brief), for respondent-appellee.

Before MEDINA, WATERMAN and KAUFMAN, Circuit Judges.

MEDINA, Circuit Judge:

These habeas corpus proceedings brought by Kelly Wilson, a New York State prisoner, after his conviction of a narcotics violation, present a very narrow issue.

There had been a previous trial that resulted in a hung jury. The principal witness to the sale of the narcotics by Wilson was Detective Pasquale Russo, the under-cover man who made the alleged purchase, and he was corroborated to a considerable degree by three other prosecution witnesses. Before the retrial of the case assigned counsel, Neil Fabricant, Esq., of the New York Legal Aid Society staff, applied for a copy of the transcript of the first trial. This application was summarily denied, but, before the commencement of the second trial counsel stated "At this time I would like to renew my motion for the People's testimony at the first trial," and, he added, a denial of this motion "would deny the defendant equal protection of the laws and due process." Thus we need only decide whether or not the denial of Wilson's application for that part of the transcript of the first trial that contained the testimony of Russo and the other three witnesses constituted a violation of his constitutional rights.

The whole case turned on the credibility of Russo. It was conceded that Wilson did not have the money to pay for this part of the transcript, amounting to something over 150 pages, and we think the transcript of the testimony of these witnesses was "an instrument needed to vindicate" Wilson's legal rights. As it is

established that the only obstacle was Wilson's lack of money to pay the reporter, it follows, we think, that the denial of Wilson's motion, under the circumstances of this case, did deprive him of his constitutional right to equal protection of the laws. And this is not only because this partial transcript would be necessary for impeaching the credibility of Russo and the three corroborating witnesses by reason of any discrepancies or inconsistencies that might be found between the testimony of these witnesses at the new trial and the testimony they gave at the first trial, but the partial transcript would also be helpful in connection with a proper and effective preparation by Wilson's lawyer for the new trial.

The latest pronouncement by the Supreme Court on the subject, in Roberts v. LaVallee, 389 U.S. 40, 42, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967) is decisive:

> Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution. See, e.g., Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Only last Term, in Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), we reiterated the statement first made in Smith v. Bennett, 365 U.S. 708, 709, 81 S.Ct. 895, 896, 6 L.Ed.2d 39 (1961), that "to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws."

We think it is not a sufficient answer that Wilson's counsel was permitted to see Russo's testimony before the Grand Jury. A similar argument was rejected in *Roberts*.[1] Nor, in our view, are Wilson's rights defeated by the fact that the same assigned counsel rather than a different one defended him on the two trials. In several of the cases [2] involving applications for transcripts of a former trial, or parts thereof, courts have implied that, if the lawyer were the same, he might be expected to remember what testimony was given at the first trial or perhaps he might have notes to refresh his recollection. We think constitutional rights should not be implemented in any such niggardly fashion.

In other cases [3] various suggestions are made to the general effect that a trial judge in the exercise of his discretion can avoid any violation of an indigent defendant's right to equal protection of the laws by permitting some sort of limited access, during the second trial, to the reporter at the first trial, to check any specific alleged contradiction. This is not only a case of too little and too late; it is also a breeder of delay and confusion. Worst of all, despite the good intentions of the trial judge, such a ruling is apt to lead the defendant into a trap and gravely prejudice his defense. That is precisely what happened in this case.

The trial judge having denied the motion "in all respects" at the commencement of the trial, there came a time when assigned counsel for the defendant thought he remembered one or two discrepancies between Russo's testimony at

---

1. See majority and dissenting opinions in United States ex rel. Roberts v. LaVallee, 373 F.2d 49 (2d Cir.), vacated, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967).

2. See Little v. Turner, 402 F.2d 495 (10th Cir. 1968); Forsberg v. United States, 351 F.2d 242 (9th Cir. 1965); Peterson v. United States, 351 F.2d 606 (9th Cir. 1965). See also the concurring opinion of Mr. Justice Goldberg in Hardy v. United States, 375 U.S. 277, at 288–289, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964).

3. Forsberg v. United States, 351 F.2d 242 (9th Cir. 1965); Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808 (1963), cert. denied, 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964).

the first trial and his testimony on direct examination at the second trial. The following occurred:

Q. Officer, you recall testifying at the previous trial of this action on August 8th; is that correct? A. Correct, sir.

Q. Do you recall testifying? A. Yes, Sir.

Q. Do you recall being asked the question, "Where did you first see Kelly Wilson on that day?" and do you recall making the answer that you saw him inside the bar? Do you recall that? A. Nope.

Having received these answers there was a conference at the bench at which Mr. Fabricant brought up the subject of the testimony at the prior trial. Later the trial judge said that he would reconsider the motion for the transcript of Russo's testimony "at least to the extent that it involved the testimony of this witness with respect to a certain aspect of the testimony as to which he believed that the witness could be contradicted by his testimony at the prior trial, to wit: the place from which the other man came, who was alleged to have accompanied the defendant from the vicinity of 84th Street up to 85th Street."

Accordingly, arrangements were made to have Mr. Fabricant and the prosecutor get in touch with the reporter who took the testimony at the prior trial. The specific direction was "if there are any aspects of that testimony, or any parts of that testimony, which do involve an actual contradiction, that he [the reporter] is directed to supply transcripts of those portions as expeditiously as possible." The lawyers met with the reporter and arranged to meet at half past eight A.M. at the Bronx County Court House for the purpose of going over the transcript. This resulted in considerable delay and perhaps some inconvenience to the jurors. In any event, when the particular portion of the transcript was read, it was found that counsel had been mistaken and that the contradictions he thought would be found could not be found.

Unfortunately, and despite the fact that the various colloquies about the reading of the prior testimony had already taken place in the absence of the jury, this was not an end of the matter. During the prosecutor's summation the following occurred:

You remember Mr. Fabricant asked Detective Russo certain questions during the course of this trial, and whether he remembered testifying on a prior occasion, and being asked a question to the effect: where did the unknown male come from, and did you testify that he came out of some bar in between the corner of 84th and 85th Street, and that you walked about a half block with him toward the corner? Now, Detective Russo said he remembered being asked that question, but that that was not the answer he gave. He didn't hear anything more about that.

You didn't hear any minutes produced in court to show that, in fact, Detective Russo had made a contradiction. So that all you have before you now is the naked question with the officers' denial. Surely that indicates to you the perfect consistency between a prior proceeding and this one.

Detective Russo was also asked whether, for the first time, he saw the defendant in (sic) bar, and whether he had said on a prior occasion that that's where he had seen him.

Detective Russo said no, that was not his testimony, and you heard nothing to indicate that it was.

To complete the damage, the trial judge charged the jury as follows:

And the previous trial could only be of importance if it is established that a witness at this trial testified inconsistently with the way that he testified at the other trial, and, to my recollection, this was never established at any time in this case that that was so.

Had the trial judge granted the motion for a partial transcript in the be-

ginning, as we hold it was his duty to have done, counsel for Wilson would have read Russo's testimony at the first trial and this entire train of events so prejudicial to Wilson would never have taken place. This is a perfect illustration of the result of not providing an indigent defendant in a criminal case with the "instruments needed to vindicate (his) legal rights." What happened in this case also is an indication that the distinction between cases where the defendant's lawyer was the same on both trials and those where he was different, to which we have already adverted, is not based on sound legal principle.

We perceive no conflict whatever between what we now decide and United States v. Carella, filed today.

Reversed and remanded to the District Court for issuance of the writ unless the State forthwith grant petitioner a new trial after affording the relief discussed in this opinion.