**UNITED STATES of America ex rel. Charles JOSEPH, Petitioner-Appellee,**

v.

**J. Edwin LaVALLEE, Warden of Clinton Prison, Dannemora, New York, Respondent-Appellant.**

**No. 475, Docket 32950.**

United States Court of Appeals Second Circuit.

Argued May 6, 1969.

Decided Aug. 7, 1969.

Amy Juviler, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, and Samuel A. Hirshowitz, First Asst. Atty. Gen., State of New York, on the brief), for appellant.

Philip E. McCarthy, New York City, (Simpson, Thacher & Bartlett, New York City, on the brief), for appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Respondent appeals from an order of the United States District Court for the Northern District of New York, Foley, Chief Judge, sustaining the application of petitioner Charles Joseph for a writ of habeas corpus. We reverse for reasons hereinafter stated.

On June 2, 1965, Joseph and co-defendant Henry Swine were charged by indictment in the Supreme Court, Bronx County, with robbery in the first degree, burglary in the second degree, assault in the second degree, petit larceny and several related crimes. It was alleged that at about 1:30 p.m. on April 26, 1965, Joseph and Swine entered the Bronx apartment of Miss Emma Krauss, whom they assaulted, bound and gagged before taking a radio. Martin Chain, who lived in the apartment house next door, testified at the trial that just before 1:30 p. m. on the day of the crime, Joseph and another man [1] had come to his door saying they were looking for "John." Chain, suspicious of the two men, watched them go back to the street, where Joseph began to shout "Hey, John" while the other man climbed a fire escape and broke a window on the second floor of Emma Krauss' apartment house. Chain then observed Joseph run up the front stairs of that apartment house, and he immediately called the police to report what he suspected to be a breaking and entry.

Miss Krauss, a woman in her mid-80's, testified that at the same time on the same day, she returned to her locked apartment on the second floor of her building, having gone down the hall for her mail. When she re-entered the apartment, she was grabbed from behind by a person whom she could not see, thrown to the floor, and bound and gagged. Miss Krauss, knocked unconscious, could remember nothing else until she awoke in a day nursery after ten days of hospitalization and treatment for the serious injuries which she suffered.

Patrolmen Michael Driscoll and Arthur Rose, responding to the call of a "burglary in progress" arrived at the apartment house and covered both the front and fire escape exits. Officer Driscoll, listening at several doors on the second floor of the apartment house,

---

1. Chain testified after Swine had entered a guilty plea on the third day of the trial and, therefore, was not identified.

heard moaning and two male voices emanating from Miss Krauss' apartment. He specifically heard one voice say "the cops are here, grab the radio and let's go." He tried the door and found it locked, but at that moment Joseph and Swine burst out of the apartment, with Swine carrying a shopping bag containing a radio. Officer Driscoll, seeing the feet of a woman lying on the kitchen floor within the apartment, asked the men why they were there. Joseph answered, "we live here." Officer Driscoll then apprehended Joseph and Officer Rose captured Swine.

Shortly after his arrest, Swine confessed to the crimes of assaulting Emma Krauss, burglarizing her apartment and taking a radio. In his confession he inculpated the petitioner, Joseph. Joseph, on the other hand, denied any connection with the crime and complained of physical abuse by the police. Both Swine and Joseph pleaded not guilty.

After the indictment, both defendants moved for Huntley hearings to determine the voluntariness of their respective confessions.[2] Joseph moved for a severance on the ground that he would be inculpated by Swine's confession, but the Court (Supreme Court, Bronx County, Korn, Justice), reserved decision on this issue until the final determination of voluntariness. Justice Korn then determined that Swine's confession was voluntary, and that Joseph's utterance "we live here" was made before any of the alleged abuse by police officers and was, therefore, admissible. The motion for severance was never ruled upon.

Immediately before trial Joseph again moved for a severance, on the grounds (1) that the jury would not be able to block from their minds that even a redacted confession of Swine referred to him, and (2) that he would be prejudiced should Swine plead guilty during the trial. This motion was denied by Murphy, Justice, presiding. At the trial Swine's confession was introduced by the prosecution, after redaction as ordered by Justice Murphy. Swine did not take the stand, and on the third day of the trial, following the testimony of three police officers as to his oral confession, Swine pleaded guilty. This plea was entered out of the presence of the jury and Swine was not present for the balance of the trial. Joseph then testified on his own behalf. At the conclusion of the trial, the jury found Joseph guilty of robbery in the first degree, burglary in the third degree and assault in the second degree. He was sentenced on March 4, 1966, to concurrent terms of 15 to 20 years, 2½ to 5 years and 5 to 10 years, respectively. On appeal this conviction was affirmed on October 24, 1967 by the Appellate Division, First Department (28 A.D.2d 1091), and leave to appeal to the New York Court of Appeals was denied on December 1, 1967 (Breitel, Judge).

This petition for a federal writ of habeas corpus was filed by Joseph on March 19, 1968 and sustained by the district court on September 24, 1968 on the ground that Joseph had suffered error under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), as made retroactive by Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), which was not harmless "beyond a reasonable doubt" under the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

A guide to "beyond a reasonable doubt" is furnished by the Supreme Court in its recent decision in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (decided June 2, 1969), handed down after the order of the District Court below. There the petitioner, Harrington, a Caucasian, was tried with Bosby, Rhone and Cooper, all Negroes, in a State trial for attempted robbery and first degree murder. The four men were tried together over an objection by Harrington that his trial

---

2. The "confession" contested by Joseph was his statement to Officer Driscoll ("we live here") immediately prior to his apprehension at the scene of the crime.

should be severed. Each of his three co-defendants confessed and these confessions were introduced at the trial with limiting instructions, given later, that the jury was to consider each confession only against the confessor. Rhone, whose confession referred to Harrington by name, took the stand and was cross-examined by Harrington's counsel. Bosby and Cooper, whose confessions did not mention Harrington by name but referred to him as "the White guy," did not take the stand. All four were found guilty of felony murder and sentenced to life imprisonment.

The admission of the confessions of Bosby and Cooper, as the Harrington court acknowledged (395 U.S. 250, 89 S. Ct. 1726), constituted a violation of Harrington's Sixth Amendment right of confrontation under the rule of Bruton v. United States, supra, which held that the extra-judicial confession of a non-testifying co-defendant may not be introduced into evidence, even when limiting instructions are given to the jury. Following the affirmance of Harrington's conviction by the Court of Appeal of California, Second Appellate District, the Supreme Court granted certiorari to consider whether, on the special facts of that case, the violation of Bruton was harmless error under Chapman v. California, supra. The Court decided that "the case against Harrington was so overwhelming that we conclude that this violation of Bruton was harmless error beyond a reasonable doubt * * *." 395 U.S. at 254, 89 S.Ct. at 1728. In reaching this conclusion, the Court noted

that (1) the petitioner made statements which fell short of a confession but which placed him at the scene of the crime; (2) several eyewitnesses placed petitioner at the scene of the crime; and (3) the confession of a testifying co-defendant (Rhone) placed Harrington at the scene with a gun at the time of the murder.

In the case at bar, Joseph faced similar overwhelming evidence, apart from the admission of Swine's confession. Like Harrington, he made a statement ("we live here") which fell short of a confession [3] but which placed him at the scene of the crime. Additionally, Chain positively identified Joseph as having participated in the breaking and entry of Emma Krauss' apartment and there was Officer Driscoll's testimony that he apprehended Joseph just as he was escaping from the apartment where Miss Krauss lay bound and unconscious. Finally Joseph, unlike Harrington, took the stand and availed himself of the opportunity to explain his conduct, which explanation apparently was not believed by the jury.

As in *Harrington,* the record here shows that this case "was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this State conviction undisturbed." 395 U.S. at 254, 89 S.Ct. at 1729.

The order of the District Court is reversed, and the writ and petition dismissed.

---

3. There is authority in this circuit for the proposition that *Bruton* is inapplicable where, unlike the case at bar, a defendant has made a full confession which is introduced along with the confession of a non-testifying co-defendant. "Where the jury has heard not only a codefendant's confession but the defendant's own con-

fession, no such 'devastating' risk attends the lack of confrontation as was thought to be involved in *Bruton.*" United States ex rel. Catanzaro v. Mancusi, 404 F.2d 296, 300 (2d Cir. 1968). See also United States ex rel. Dukes v. Wallack, 414 F.2d 246 (1969).