UNITED STATES of America ex rel.
William CADOGAN, Petitioner-
Appellee,

v.

Hon. J. Edwin LaVALLEE, as Warden
of Clinton State Prison, Dannemora,
New York, Respondent-Appellant.

No. 738, Docket 34234.

United States Court of Appeals,
Second Circuit.

Argued April 29, 1970.

Decided June 5, 1970.

Anderson, Circuit Judge, concurred in result and filed opinion.

Amy Juviler, Asst. Atty. Gen. of New York (Samuel A. Hirshowitz, First Asst. Atty. Gen., Louis J. Lefkowitz, Atty. Gen. of New York, on the brief), for respondent-appellant.

Michael H. Rauch, New York City, for petitioner-appellee.

Before HAYS, ANDERSON and FEINBERG, Circuit Judges.

HAYS, Circuit Judge.

I.

This is an appeal from an order of the United States District Court for the Northern District of New York granting appellee William Cadogan's application for a writ of habeas corpus, setting aside his state court convictions, and ordering the appellant Warden to discharge Cadogan from custody unless the State of New York retries him within 60 days. The execution of the order was stayed pending this appeal.

Before his state court trial on narcotics charges, appellee who had been declared indigent, requested a free copy of the transcript of a hearing on his pre-trial motion for suppression of certain evidence. This request was refused and the court below found that appellee thereby denied the equal protection

of the laws. We do not agree and reverse the judgment.[1]

## II.

In April, 1963 appellee was arrested at his home for narcotics violations. During a search incidental to this arrest, narcotics were uncovered and he was indicted on two counts of selling narcotics and one count of possessing narcotics. Since appellee was indigent, the Legal Aid Society was assigned to represent him. A pre-trial hearing on a motion to suppress the evidence seized pursuant to the arrest was had in Queens County Supreme Court. The two arresting officers, Detective Marvin Moskowitz and Patrolman James Malone, testified that they had been working with an undercover agent who had purchased narcotics from appellee on two occasions several days before the arrest and that they found narcotics during their search of appellee's premises. The motion to suppress was denied subject to renewal at trial.

Appellee moved *pro se* for a free copy of the transcript of the hearing on the motion to suppress. The motion was denied because there was no statutory authorization for providing such a transcript.[2]

Appellee went to trial in September, 1963 before a different Queens County Supreme Court Justice, having waived a jury trial. He was represented by a different Legal Aid attorney from the attorney who had appeared for him on the motion to suppress and the State was represented by a different assistant district attorney. Patrolman Modesto, the undercover agent, was the principal witness and testified that he had purchased narcotics from appellee on two occasions

and that he had identified appellee through a two-way mirror after his arrest. Patrolman Malone was called as a witness and his testimony was essentially the same as that which he gave at the suppression hearing. Detective Moskowitz was not called, partly because of confusion as to whose witness he was at the suppression hearing. Appellee was found guilty and received sentences of 15 to 30 years on each of the sales counts and 6 to 20 years on the possession count, all sentences to run concurrently. The Appellate Division affirmed. People v. Cadogan, 23 A.D.2d 721, 258 N.Y.S.2d 345 (2d Dept. 1965). Leave to appeal to the Court of Appeals was denied. Although the minutes of the suppression hearing were transcribed and available to appellee shortly after the trial, the earlier denial of the free transcript was not raised on appeal.

However, appellee has now exhausted this claim in the state courts. A habeas corpus petition raising the denial of the transcript was denied in the Clinton County Supreme Court. This order was affirmed by the Appellate Division, People ex rel. Cadogan v. McMann, 29 A.D. 2d 844, 288 N.Y.S.2d 870 (3d Dept. 1968), and by the Court of Appeals, 24 N.Y.2d 233, 299 N.Y.S.2d 617, 247 N.E. 2d 492 (1969). The Court of Appeals held that, although the rule announced in People v. Ballott, 20 N.Y.2d 600, 286 N.Y.S.2d 1, 233 N.E.2d 103 (1967), requiring the State to furnish a transcript of an earlier trial to an indigent, applied to the transcript of a pre-trial suppression hearing, the rule was not to be applied retroactively. Thus the problem presented by the present case will not arise in New York in trials commenced after the decisions in People v. Ballott, *supra*, and People v. Montgomery, 18 N.

---

1. In his petition appellee also advanced a claim that denial of the transcript deprived him of his right under the Sixth Amendment to cross-examine the witnesses against him. He does not press this contention on appeal, and, in any event, it would have to be rejected under the same reasoning as that leading to rejection of his other constitutional claims.

2. New York now provides indigents with transcripts of this nature. People v. Ballott, 20 N.Y.2d 600, 286 N.Y.S.2d 1, 233 N.E.2d 103 (1967) ; People v. Montgomery, 18 N.Y.2d 993, 278 N.Y.S.2d 226, 224 N.E.2d 730 (1966).

Y.2d 993, 278 N.Y.S.2d 226, 224 N.E.2d 730 (1966).

### III.

■ Not every denial of a free transcript to an indigent results in a denial of equal protection of the laws. In Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam), the Court said:

"Our decisions for more than a decade now have made clear that differences in access to the instruments *needed* to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." (Emphasis added.) *Id.* at 42, 88 S.Ct. at 196.

And in United States v. Carella, 411 F.2d 729, 733 (2d Cir.), cert. denied sub nom. Erhart v. United States, 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed.2d 112 (1969), this court said:

"We are unwilling to say that a full transcript of a lengthy former trial, much of it relating to matters of no true concern to the indigent defendant, is invariably 'needed,' however convenient it might be for counsel thus to be able to avoid having to think out what he truly requires."

See Gardner v. United States, 407 F.2d 1266, 1267 (D.C.Cir.), cert. denied, 395 U.S. 911, 89 S.Ct. 1757, 23 L.Ed.2d 225 (1969) ("Timely objection to denial of this right [to a written transcript] requires reversal of a conviction if an accused was *prejudiced* by the denial") (emphasis added).

United States ex rel. Wilson v. McMann, 408 F.2d 896 (2d Cir.1969) and Little v. Turner, 402 F.2d 495 (10th Cir.1968) are inapposite since in both cases specific prejudice to the defendant could be attributed to the failure to provide a transcript.

In *Wilson* the entire case turned on the credibility of one Russo, whose testimony in the first trial was not made available to the defendant, and this court cited a specific instance of prejudice caused by the unavailability of this testimony. Little v. Turner is similar. There the court assumed arguendo:

[T]hat a state may vest in its courts some degree of discretion in furnishing to an indigent defendant certain of the many types of transcripts possible to exist under varying criminal procedures in the several states * * * * " 402 F.2d at 498.

### IV.

Thus the question before us is whether the transcript requested by appellee was an "instrument needed to vindicate legal rights." Roberts v. LaVallee, *supra*, 389 at 42, 88 S.Ct. at 196. Appellee contends that it was because if he had had it he would have (1) cross-examined Modesto on the basis of the testimony of Malone and Moskowitz; (2) impeached Malone's trial testimony; and (3) called Moskowitz as a witness.

■ Our examination of the evidence presented at the suppression hearing, a transcript of which is included in the record before us, convinces us that its availability to appellee would have provided no significant assistance. The inconsistencies appellee points to between Modesto's and Malone's testimony at trial and Moskowitz's testimony at the suppression hearing are trivial.[3] The same is true of the inconsistencies said to exist between Malone's testimony at the hearing and his testimony at the trial.[4] The minor variances could not

---

**3.** Moskowitz testified that the arrest took place at about 8:45 P.M., Modesto set the time at 7:00 P.M. and Malone testified at trial that it took place at about 5:00 P.M. Moskowitz stated that he "observed several caps of white powder on the table with a vial also containing white powder" while Malone testified at trial that "fifty-four capsules and a vile (sic) of white powder" were on the table.

**4.** Malone testified at trial that he did not know whether he or Moskowitz first entered appellee's residence. At the suppression hearing he had testified that Moskowitz entered first.

have affected the determination of the case. This is especially true of a case tried, as was this case, by a judge rather than by a jury.

Detective Moskowitz was called by the defense at the suppression hearing. At trial defense counsel mistakenly believed that Moskowitz had been a witness for the state and made no arrangements to call him. The court was willing to permit an adjournment to give the defense an opportunity to subpoena Moskowitz. The following colloquy ensued:

"Mr. Brett: If Your Honor please, in all candor, you did inquire as to the materiality of any testimony I might be able to adduce from Detective Moscowitz and as to that I stated that I did not know how material his testimony would be. I stated to you that possibly my desire to call him might result only in a—

The Court: Further corroboration of the other witness.

Mr. Brett: Yes, Judge, and what might commonly be referred to as a fishing expedition in that I would be interested in pitting the testimony of Moscowitz against those of the two previous witnesses, Modesto and Malone; so that would be the purpose of my calling him. * * * "

The trial judge then denied a request for an adjournment because he too was convinced that Moskowitz's testimony was "in corroboration of the other witnesses."

An examination of Moskowitz's testimony indicates that this was indeed the case.

■ Appellee argues that this court should not consider the nature of the evidence introduced at the suppression hearing because counsel at trial was in a better position to assess what might be helpful to defendant's case, citing Dennis v. United States, 384 U.S. 855, 874–875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) and Hardy v. United States, 375 U.S. 277, 288, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) (Goldberg, J., concurring).

This may well be true where there exists some doubt as to the usefulness of the transcript. But where, as here, it is clear that the transcript would not have been useful there is no reasonable ground for requiring that it be provided.

In a case where the transcript of a preliminary hearing denied to a defendant for use at trial was not before the court on appeal, and the court could not therefore know whether the transcript would have been useful or not, the District of Columbia circuit has held that failure to provide the transcript does not require reversal of a conviction where there is strong evidence of guilt and no showing of prejudice. Gardner v. United States, *supra*. The evidence of appellee's guilt in the present case was strong and fully corroborated.

Reversed.

ANDERSON, Circuit Judge (concurring).

I concur in the result. In my opinion, Judge Port was correct in holding that the transcript of this suppression hearing was within the class of "instruments needed" by the accused in preparation for his trial in the light of United States ex rel. Wilson v. McMann, 408 F. 2d 896 (2 Cir. 1969); and it was error for the trial judge to have refused to accede to the defendant's request for it.

General confusion ensued at the point in the trial when the suppression issue and the question of adjournment to call the witness Moskowitz arose, illustrating the need for prior access to such transcripts under circumstances like those in Cadogan's case. Throughout the discussion between the court and counsel concerning Moskowitz's possible testimony, no one knew what the transcript actually contained; and the trial judge could not and did not know that his suppression hearing testimony had in fact been brief and totally corroborative.

When a constitutional error is shown on collateral attack, the burden rests on the State to prove beyond a reasonable doubt that the accused was in no way

prejudiced by it. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967); United States ex rel. Joseph v. LaVallee, 415 F.2d 150 (2 Cir. 1969). By the time of the habeas corpus hearing, the transcript had been made available to the court and the parties. It included little more than the record of attempts to learn the identity of the undercover agent Modesto before trial and disclosed nothing which would have been of any conceivable aid to the defense. Even with it, counsel would have faced the tactical decision of whether or not to call Moskowitz solely for the purpose of a fishing expedition, which he elected not to do. As Judge Hays has pointed out, nothing in the transcript would have helped the defense impeach the credibility of the policemen who testified at trial; and the petitioner has not suggested any other way in which the denial of the transcript could have hampered the effectiveness of his defense. In view of the overwhelming evidence of Cadogan's guilt, it is clear that the error in the denial of his production motion was harmless.