**Elroy HENDRIX, Petitioner,**

v.

**Harold J. SMITH, Superintendent, Attica Correctional Facility, Respondent.**

80 C 593.

United States District Court,
E. D. New York.

July 29, 1980.

Elroy Hendrix, petitioner pro se.

Robert Abrams, Atty. Gen. of N. Y., New York City, for respondent by Gerald J. Ryan, Asst. Atty. Gen., New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner *pro se* applies for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is currently a State prisoner serving sentences imposed upon a judgment of conviction of one count of robbery in the first degree and two counts of robbery in the second degree. His conviction was affirmed on appeal by the Appellate Division, Second Department. *People v. Hendrix*, 56 A.D.2d 580, 391 N.Y.S.2d 186. An additional conviction for attempted murder was reversed and that count of the indictment dismissed. The New York Court of Appeals affirmed by memorandum order dated March 23, 1978. 44 N.Y.2d 658, 405 N.Y.S.2d 31, 376 N.E.2d 192.

The sole issue raised by the petition is whether petitioner's Sixth Amendment right to confront the witnesses against him was violated by the introduction of an inculpatory statement of a co-defendant, John Anthony, whose trial was severed and who did not testify at petitioner's trial. While both State appellate courts found error in allowing a police officer to testify as to the former co-defendant's extrajudicial statements, which inculpated petitioner, both courts concluded the error was harmless beyond a reasonable doubt in view of the overwhelming proof of guilt, citing *People v. Crimmins*, 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975). The testimony at trial reveals the following:

In May 1974, William J. Barner returned home to a surprise birthday party at 330 Spring Road, Huntington Station, New York. He testified at petitioner's trial that approximately 15 people attended, including John Anthony and a man named Elroy, and that petitioner looked like the Elroy who was at the party although he was not sure. Barner stated that he left the party with John Anthony and Elroy to get some beer and that on the way back Elroy showed him a small gun which he had in a pocket. After returning to the party, Barner testified that Henry Jefferson invited John Anthony out for a beer and that he saw them leave the house but did not see Elroy leave. Later on, Henry Jefferson returned to the house bleeding from a stomach wound and claiming that he had been robbed by John Anthony and Elroy.

Clinton Anthony, the brother of John Anthony, testified that he also attended the party for Barner and that he had never seen Elroy prior to the party. Elroy escorted the Anthonys' sister, Judy Lawrence, and a friend to the party. The witness testified that Henry Jefferson and John Anthony left the party to go to a bar, "The L Shaped Room," and that Elroy left approximately ten minutes later. He also stated that he took Henry Jefferson to the police station and heard Henry repeat that John and Elroy had robbed him.

The victim, Henry Jefferson, testified at petitioner's trial that he had seen Elroy on five or six prior occasions in the Bronx when he went to visit Eartha Crowell, a friend of Judy Lawrence, who was Elroy's girlfriend. He identified petitioner as his assailant. He stated that, after drinking with John Anthony and Elroy at The L Shaped Room, he and Anthony drove off in one car and Elroy followed behind in another. Jefferson testified that Elroy cut in front of him, pulled him out of the car and demanded his money; that he saw a gun in Elroy's hand, heard two gunshots and John Anthony yell he was hit, and that Anthony and Elroy ripped his pants off and took his wallet with some $375. He then returned

to the party where he was taken to the police station and later to Huntington Hospital for treatment of gunshot wounds. Jefferson admitted to having shot and killed a plainclothes police officer in 1953 with a small caliber gun but denied having a gun on him on the date he claims he was robbed and shot.

Detective George Cooke testified as to his investigation into a complaint of a robbery, including objects found at the scene of the crime. He stated that, as a result of his investigation, warrants were issued for the arrests of John Anthony and Elroy Hendrix. John Anthony was arrested on June 7, 1974; Elroy Hendrix was arrested on June 27, 1974. On cross-examination, Detective Cooke testified that the police had received no report of a shooting in the area of the crime on the night it was allegedly committed and that there was no independent evidence which could objectively connect petitioner to the commission of the crime. Sunglasses recovered at the scene of the crime, however, were demonstrated to be John Anthony's.

On re-direct examination, the prosecution elicited testimony from Detective Cooke concerning a detailed written statement given by John Anthony as to what occurred on the night of the robbery. Although the trial court sustained the defendant's objection to the introduction of the written statement, the court nonetheless permitted the prosecution to inquire into the details of the statement through the testimony of Detective Cooke. The court admitted this evidence with the limiting instruction that the statement was admitted not for the truth of its contents but for the fact that it was made.

Detective Cooke testified that John Anthony told him that while they were at the L Shaped Room, Elroy saw Henry Jefferson's money and told him that he was going to rob Jefferson. Cooke also repeated Anthony's statement that Elroy had the gun and that during a scuffle to get the money Henry Jefferson was shot and he was shot in the finger. The statement continued that Anthony and Elroy took Jefferson's

wallet and returned to the Bronx, where Anthony went to the hospital for treatment of his wound. He also stated that he got mad because Elroy took off with the money. Finally, Anthony told Detective Cooke that petitioner lost a shoe during the robbery which was never recovered.

The defense case consisted of the testimony of Eartha Crowell and Judy Lawrence, John Anthony's sisters, and Daisy Luck, petitioner's sister and a friend of Judy Lawrence. Eartha Crowell testified that Henry Jefferson called her and offered her $50 to testify. On cross-examination, she stated she saw John after the party at her mother's house in the Bronx and that he had a bandage on his hand. Judy Lawrence testified that Elroy was not at the party on the night of the crime and that she had a conversation with Henry Jefferson in which he told her that he would drop the charges if they paid him $2,000 or $2,500. Daisy Luck testified that, while she did not know Henry Jefferson, she called him after Judy Lawrence told her that he wanted $2,000. She stated he told her he was hurt and wanted to get something out of it. She responded that she would not pay for something her brother did not do.

In summation, the prosecutor told the jury:

"Detective Cooke also testified that he spoke to John Anthony on June 20th, when he was arrested. And he recited what John Anthony told him about the commission of the crime. And that corroborated in every essential detail Henry Jefferson's testimony as to where he went, to and from the L–Shaped Lounge, what happened at Spring and Nassau Road. Is that additional corroboration for the testimony of Henry Jefferson?"

And in the court's charge to the jury, the trial judge stated:

"And you may also consider the testimony of Detective Cooke who testified that he found no evidence to connect the defendant Elroy Hendrix to the crime except the statements of John Anthony on June 20, 1974, to which he testified. That testimony was allowed to establish that

the conversation between John Anthony and Detective Cooke took place, not to establish the truth of the statements by John Anthony."

■ The State appellate courts concluded that the introduction of Anthony's statement through Detective Cooke in the circumstances of the case violated petitioner's Sixth Amendment rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but found the error harmless beyond a reasonable doubt under *People v. Crimmins, supra.* See *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). The only question then is whether the State courts were correct as a matter of federal law in their conclusion of harmless error. See *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Reversal is required only if there is a reasonable possibility that an improperly admitted statement contributed to petitioner's conviction. *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). And the conviction may stand if an average jury would not have found the prosecution's case significantly less persuasive had the statement not been admitted. *Id.* Thus, we must consider the record as a whole, including the prosecution's reference to Anthony's statement in summation, see *Bond v. State of Oklahoma*, 546 F.2d 1369, 1376 (10th Cir. 1976); *cf. Chapman v. California, supra*, 386 U.S. at 25, 87 S.Ct. at 828, in deciding whether the error was harmless beyond a reasonable doubt.

The State argued in the appellate courts that Detective Cooke's recitation of the statements made by John Anthony was merely cumulative of other evidence adduced at trial. It claimed that Henry Jefferson, the eyewitness complainant, laid out the elements of the charge; that William Barner placed petitioner (less than positively) at the party and in possession of a gun; that Clinton Anthony stated that petitioner was at the party and left ten minutes after Jefferson and Anthony left, and that upon Jefferson's return, he told him that Elroy and John had robbed him. The State argued, successfully, that this testimony with hospital records verifying that Anthony was shot as Jefferson claimed is "overwhelming" evidence of petitioner's guilt.

On this habeas corpus proceeding, the State contends that Anthony's statement was not vitally important to the State's case under *United States v. Knuckles*, 581 F.2d 305 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 569 (1978), and that there was "sufficient basis . . . for the jury to convict petitioner without any reference to the nontestifying co-defendant's statement." *United States v. Wright*, 588 F.2d 31 (2d Cir.), *cert. denied*, 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1978).

The State's citation of authority does not add appreciably to the inquiry into whether the apparent *Bruton* violation was harmless in the circumstances. Our independent review of the trial record, focusing particular attention on the manner in which the case was proved and submitted, leads to the conclusion that the violation of confrontation rights under *Bruton* was indeed harmless beyond a reasonable doubt. Here, overwhelming evidence of petitioner's guilt was presented through the eyewitness testimony of the victim of the robbery. Jefferson testified to the events leading to and the specific circumstances of the robbery. He was subject to full cross-examination, including probing inquiry into his own conviction for killing a policeman in 1953, and his testimony was apparently credited by the jury which convicted petitioner. Quite apart from the improperly admitted statements, moreover, Jefferson's testimony was corroborated at least in part by that of William Barner, who testified that petitioner was at the party and in possession of a gun, and that of Clinton Anthony, who testified that petitioner left ten minutes after the victim and his brother went to the bar. There was also evidence in the form of John Anthony's hospital records that corroborated Jefferson's testimony that Anthony yelled that he was hit during the robbery.

The circumstances of this case are therefore wholly unlike those requiring reversal

318

of a conviction on *Bruton* grounds where there is no eyewitness testimony, *United States ex rel. LaBelle v. Mancusi*, 404 F.2d 690 (2d Cir. 1968), or the only evidence properly before the jury is statements by non-participants in the crime which did not directly connect the defendant with the crime charged, *United States v. Castello*, 426 F.2d 905 (2d Cir. 1970). The strength of the eyewitness identification, which was not challenged in any material respect (Jefferson testified that he had seen petitioner on five or six occasions prior to the night the crime was committed) and which the jury accepted, make the case an appropriate one for application of the harmless error standard. Here there is little serious contention that this case involves mistaken identification. Rather, petitioner's counsel argued most strenuously to the jury that Jefferson lied. The jury rejected the argument. As in *Harrington v. California, supra*, the case "was not woven from circumstantial evidence." See *United States ex rel. Joseph v. LaVallee*, 415 F.2d 150 (2d Cir.), *cert. denied*, 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 133 (1970).

Accordingly, petitioner's application for a writ of habeas corpus is denied.

SO ORDERED.