OPINION OF THE COURT
Harold Fertig, J.
The circumstances of this motion are relatively unique. This court could find no reported case where a similar motion was made during or at the end of trial.
*12 At the end of trial, after both sides had rested, the defendant made a motion requesting that the testimony of the People’s witness, Louis Santorella, be stricken. The basis of that motion was that the People did not produce a statement taken from Mr. Santorella, by the police of Nassau County, on the date of the incident in question. The case involves an alleged assault by the defendant on the complaining witness, Roy Stone, in the Mays department store in North Woodmere, New York, on March 16, 1979 at about 8:00 p.m. The witness, Louis Santorella, testified as to his observations concerning the incident and made statements which were inculpatory to the defendant. On cross-examination the witness testified that he had given a statement to a police officer on the date of the incident and that he had signed that statement. Defense counsel requested production of the statement and it was then for the first time that the defendant and the court and the jury were advised that no such statement was available. Defendant then moved to have all of the testimony of that witness stricken. At that time that motion was denied.
During the course of discussion in chambers concerning that motion, the court advised the defendant that it would direct the People to have the police officer who took the statement in court on the following day, so that defendant might have an opportunity to question that police officer or to call him as a witness if he desired. On the following day the court was advised by the District Attorney that the police officer was available in the courthouse and brought in from his vacation for whatever purpose defendant wished, either to question him or to call him as a witness.
The defendant subsequently advised the court that he did not wish to call that police officer as a witness or to question him. Nevertheless, the police officer remained in the courthouse most of the day. After the defendant’s witness testified, both sides rested. The case was put over for the following trial day for purpose of summation and charge to the jury.
On that day the defendant then, at the end of the entire case, made a motion to dismiss the information because the statement in question was not available to him for cross-examination, which motion was denied. He then made a renewed motion to strike the testimony of the witness, Louis Santorella, again on the grounds that the statement of this witness, taken by the police on the date of the incident, some nine months prior to the date of trial, was not available to *13 him for cross-examination, nor was the People’s failure to produce that statement sufficiently explained; all to the prejudice of the defendant.
Defendant cited the case of People v Lunney (84 Misc 2d 1090) as his authority for the motion. The People contend that they have made a good faith effort to locate the statement and were unable to do so. The case of People v Lunney (supra), cited by the defendant, involved the loss of minutes of a presentation to the Grand Jury, and the court held that the defendant has a right to inspect and use those witnesses’ prior statements for impeachment purposes citing People v Rosario (9 NY2d 286). In that case the court, referring to Jencks v United States (353 US 657), held that the right sense of justice entitles the defendant to examine a witness’ prior statement. The court in People v Lunney (supra) went on to say that the drastic remedy of a dismissal of the indictment should not be used in such a case. It referred to the Jencks Act, a Federal statute, and relating it to the Rosario case, indicated that a sanction under such an instance would be to strike from the record the testimony of the prosecution witness or to grant a mistrial.
In United States v Augenblick (393 US 348), the court referred to the Jencks Act. In that case certain tape recordings were unavailable for trial. Tape recordings were taken at the interrogation of one of the witnesses, and the court stated (pp 355-356), "The law officer properly ruled that the Government bore the burden of producing them or explaining why it could not do so”. It determined that an out-of-court hearing should be held to explain the nonexistence of the tapes. In United States v Bryant (439 F2d 642), the court referred to the Augenblick decision. That case also involved the loss of tape recorded conversations between the defendants and an undercover agent. It held that the rule in question was intended to apply even to prearrest statements made by defendant during the course of his crime, and was meant to broaden the scope of discovery available to defendants. Referring to the Jencks Act, the court stated (p 651) that it dealt with disclosure of statements by witnesses, and the court held that "the duty of disclosure attaches in some form once the Government has first gathered and taken possession of the evidence in question. * * * Hence, we hold that before a request for discovery had been made, the duty of disclosure is operative as a duty of preservation. Only if evidence is care *14 fully preserved during the early stages of investigation will disclosure be possible later.” And, referring to Augenblick (supra) the court stated (p 651), "Nonetheless, it held that 'the Government bore the burden of producing [the tapes] or explaining why it could not do so” ’, and went on to say that while sanctions should be imposed in cases of bad faith, such as suppression of evidence, an exception will be made for good faith loss. "An exception for good faith loss of important evidence must not be allowed to swallow the discovery rules, and the burden of explanation on the Government must be a heavy one”. (United States v Bryant, supra, p 651.) The court reasoned that criminal convictions otherwise based on sufficient evidence may be permitted to stand so long as the Government made "earnest efforts” to preserve crucial material and to find them once a discovery request is made. (United States v Bryant, supra, p 651.) The court went on to say (p 652), "Accordingly, we hold that sanctions for nondisclosure based on loss of evidence will be invoked in the future unless the Government can show that it has promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve all discoverable evidence gathered in the course of a criminal investigation. The burden, of course, is on the Government to make this showing. Negligent failure to comply with the required procedures will provide no excuse.”
It is interesting to note that the court stated, "A further inadequacy of the record before us is the lack of evidence concerning the conduct of the Assistant United States Attorney after he had been put on notice by defense counsel of the tape’s possible existence. If he made any effort at that time to preserve the tape, there is no indication of it. Testimony in that regard should clarify the extent to which the prosecution sought to fulfill its duties under the disclosure requirement.” (United States v Bryant, 439 F2d, at p 653.) The court then sent the case back to the District Court to determine the degree of negligence or bad faith involved in order to come to a determination that would serve the ends of justice.
There is no question that the defendant is entitled to examine a witness’ prior statement whether or not it varies from his testimony on the stand (People v Rosario, 9 NY2d 286, supra) and that the failure of the ability to do so is prejudicial to the defendant. The District Attorney was not compelled to furnish copies of the statements obtained from *15 any source until the witness had actually been sworn for the prosecution (People v Graziano, 46 Misc 2d 936). Here the prosecution put the witness, Santorella, on the stand as a witness, knowing at the time that a statement was taken of this witness’ account of the facts on the date of the incident, and that that statement was unavailable at the time of trial.
The People, citing People v Aviles (89 Misc 2d 1), claim that no sanctions are applicable in this case. In that case the transcripts of previous Grand Jury evidence were unavailable. The court held that the general rule in the Federal courts is that sanctions will not be imposed where the loss was inadvertent and not deliberate or in bad faith, and there was not such prejudice to the defendant as to deny him a fair trial. The court held that where the prejudice is so great that the truth process is thwarted, justice requires that sanctions and even dismissal must be imposed, citing People v Churba (76 Misc 2d 1028). It determined that if the minutes were lost there should have been a pretrial hearing to ascertain what was testified to, and ordered the District Attorney to turn over to the defense counsel prior to trial all Grand Jury testimony and police records and all the prosecutor’s own records relating to the statements of witnesses in the case. In that case there was a possible remedy that would relieve the defendant of the prejudice. In the case of People v Churba, cited in the last case, a tape recording disappeared from the Department of Consumer Affairs, and the Assistant District Attorney failed to set forth circumstances of the loss of the tapes. The court found in that case that the procedures used in preserving and protecting the tapes were, at best, haphazard and careless, and, at worst, grossly negligent. In People v Emmons (99 Misc 2d 941), the court stated that the general rule is that sanctions would not be imposed where the loss of evidence was inadvertent and there was no undue prejudice. That case involved real evidence (doors) and the court reserved the right to apply additional remedies should it later appear on the trial that the defendant might be prejudiced by the nonproduction of the doors. In People v Fleishman (92 Misc 2d 156), the court, referring to United States v Bryant (439 F2d 642, supra) indicated that the People have a heavy burden of establishing that the failure to preserve the evidence in the case was not intentional, deliberate or in bad faith. The court found that ordering a new trial would be an exercise in futility, absent the production of the detective’s book notes. It, *16 therefore, concluded that the only applicable sanctions for gross negligence was the dismissal of the indictment, an extreme remedy.
In the case before this court, the Assistant District Attorney has explained in chambers that he himself went to the police headquarters and the precinct and inquired about the statement in question, and that the statement was unavailable. He argues that he made every effort to obtain the statement and was not guilty of gross negligence.
However, the court finds that the People have an obligation and the burden to show not only that an effort was made to find the statement, but also that proper procedures were followed to preserve the evidence (United States v Bryant, supra). The officer who took the statement was in the courthouse and available to the People as well as to the defendant. The People failed to call that potential witness, who might have explained the facts and circumstances surrounding the taking of the statement; the procedures and precautions taken for preserving it; and its failure to be available at this time. The appropriate sanction to be imposed when evidence is lost to impeach a witness is to suppress that witness’ testimony (People v Hitch, 12 Cal 3d 641; see United States v Augello, 451 F2d 1167, 1170).
The People have not shown that they have promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures to preserve all discoverable evidence gathered in the course of a criminal investigation and, particularly, the statement of the witness Santorella. This court cannot infer merely because an effort was made to find the statement that the failure to produce it was in good faith. The People have not met their burden of proof and the court further finds that the defendant was prejudiced by the failure to have the statement available for cross-examination. Therefore, the defendant’s motion to strike the testimony of the witness should be granted and that testimony is hereby stricken.