Scileppi, J.
This is an appeal from a judgment convicting appellants of grand larceny in the third degree and imposing sentence after a jury trial.
On June 12, 1968 a New York County Grand Jury indicted appellants for the crimes of robbery in the second degree, robbery in the third degree and grand larceny in the third degree. Appellants were arrested, along with one Charles Booth,[1] on May 15,1968 on the complaint of John Hunter who charged that the appellants, acting together, had forcibly stolen $20 from him.
On January 2, 1969, appellants made a tripartite motion to (1) suppress evidence consisting of money seized from appellants; (2) suppress the identification of appellants by Hunter; and (3) suppress a statement[2] made by appellant Harle. These motions were denied after a hearing before Justice Grtjmet. At the outset of this hearing on January 2, 1969, and again, prior to the commencement of the trial, the defense attorneys requested a full transcript of the suppression hearing and daily copies of the trial minutes on the ground that their clients were indigent and that testimony at the hearing would be relevant to *534 cross-examination at the trial. This request was denied by the court who advised counsel to take notes. At the trial the following facts were established.
Complainant John Hunter was employed by the American Can Company as a mailroom clerk and received his pay check of $216 on May 15, 1968. He, and his wife who had accompanied him to work that morning, went to the Chemical Bank where the check was cashed and Hunter gave all but $40 to his wife. During the day he paid certain debts amounting to $15, bought lunch and subway tokens and returned to the bank to purchase two rolls of nickels (one of these rolls had the name Chemical Bank on it). Hunter left his office at about 7:00 p.m., went to a bar where he had three beers and then went to the subway. When he was about half way home, he remembered that he had left his dentures in his office and returned to pick them up. After he left his office, he walked near Bryant Park in New York City towards the subway and at approximately 9:15 p.m. he was asked for identification by three men: Zabrocky, Harle and another. Hunter thereupon removed his wallet and showed his draft card to Zabrocky and Harle punched and dragged him into the park where Zabrocky and Harle went through Hunter’s pockets removing bills and coins. Hunter testified that it was light enough to see the faces of the men. Moments later, as the attackers were running away, Hunter flagged down a police radio car, which was cruising by the park and told Patrolman Thomas J. Collins and Sergeant Louis Fortunato, who were in the car, that he had just been robbed by three white males. He was told to get into the car and they proceeded to look for the robbers. After they had traveled about a half a block, Hunter shouted: “ There they are, that’s the men ”. The three men, seeing the police car, began to walk more rapidly and the officers stopped the car and immediately apprehended Booth, Zabrocky and Harle. The officers brought the three men to the patrol car, frisked them and took them to the 14th St. Precinct House where Cfficer Collins searched them. Booth was found with $6.21 in his possession, Zabrocky had two one dollar bills and loose change and Harle had a five dollar bill, a one dollar bill, change and two rolls of nickels (one of these rolls had the name Chemical Bank on it). Hunter again identified the three men, but as previously indicated charges against Booth were later dropped.
*535 Appellants were acquitted of the robbery charges, but found guilty of grand larceny in the third degree. On appeal, the Appellate Division affirmed the conviction taking the view that guilt was overwhelmingly established. Appellants have prosecuted their appeal to this court pursuant to permission granted by Chief Judge Fum and seek reversal of the conviction and a new trial.
Appellants argue that the trial court committed reversible error by limiting their attack on the credibility of the People’s chief witness, Hunter. They had apparently obtained evidence that Hunter had been fired from his job on the date of the robbery because a safe in the mailroom in which he worked had been burglarized. On cross-examination, Hunter denied these accusations and appellants wished to call witnesses and introduce documentary evidence to show that the witness was lying. We are of the opinion that the trial court properly precluded this attempt to introduce collateral issues into the case. It is a well-settled rule that ‘1 An inquiry on cross-examination as to an immoral or criminal act of the witness for the purpose of affecting his credibility is an inquiry concerning a collateral matter. The cross-examiner may not, therefore, call other witnesses or introduce other evidence to contradict his answers ” (Richardson, Evidence [9th ed., 1964], § 503; see People v. Schwartzman, 24 N Y 2d 241; People v. Duncan, 13 N Y 2d 37). Nor was it error for the court to rule, prior to trial, that if appellants should testify they could be impeached by introducing evidence of prior convictions (People v. Schwartzman, supra; People v. Sorge, 301 N. Y. 198).
Appellants have also argued that certain errors were committed at the suppression hearing. They contend that since the officer who testified at the suppression hearing did not actually arrest appellants, no probable cause for the arrest was shown. This contention is without merit. Hunter told both officers that he was robbed by three white men and pointed them out while he was riding in the police car. Thus, probable cause was furnished to both officers and it was unnecessary to call the arresting officer. Nor is there any merit in appellants’ contention that they were improperly restricted in their cross-examination of Officer Collins because they were not allowed to ask questions about the physical description given by Hunter. Consequently, *536 the suppression Judge’s ruling was entirely proper. While in the usual case the consistency of a description given by the complaining witness, when compared with the observations of the police at the time of the arrest, is, of course, important in determining probable cause, in the case before us it would have been totally irrelevant, because the complainant was with the police at the moment of the arrest and immediately identified the appellants.[3] Appellants further contend that Hunter’s in-court identification of appellants was tainted by an “ improper precinct show up ” under United States v. Wade (388 U. S. 218) and Gilbert v. California (388 U. S. 263). We disagree. A pretrial hearing was conducted on this very issue and the court specifically found that there was no taint. As this is a question of fact, supported by sufficient evidence, it is beyond our power to review (see People v. Leonti, 18 N Y 2d 384).
As to appellants’ claim to a free daily transcription of all minutes, we have recently held that a defendant is not entitled to daily minutes (People v. Abdullah, 23 N Y 2d 676). Appellants are, however, entitled to a new trial because the trial court erroneously denied appellants a copy of the minutes of the suppression hearing. We have held that indigent defendants have a constitutional right to free transcripts of preliminary hearings (People v. Montgomery, 18 N Y 2d 993) and to minutes of a prior trial or of the Grand Jury (People v. Ballott, 20 N Y 2d 600). In People ex rel. Cadogan v. McMann (24 N Y 2d 233) we wrote that although these rights are not available in postconviction habeas corpus proceedings, “ The Montgomery-Ballott rules must, as a matter of logic and fairness, also extend to the minutes of pretrial suppression hearings ” (Cadogan, supra, at p. 240). The People, conceding that appellants were denied this fundamental right; have asked us to hold that the denial was harmless error because in their view the minutes would have been of limited use. We cannot see any merit in this contention, because the use to which a requested transcript might have been imt is irrelevant. Thus, in view of the fact that appellants seasonably requested the minutes at the commencement of the sup *537 pression hearing, one week before trial, the conviction must be reversed and a new trial ordered.
Finally, we do not condone the improper remarks and comments made by the assistant district attorney during the course of the voir dire of the talesmen and during trial; however, it is imnecessary to determine whether the prosecutor’s behavior would formulate an independent basis for a reversal since a new trial is already mandated because of the denial of the minutes of the suppression hearing.
Accordingly, the judgment of conviction should be reversed and a new trial ordered.

. Charges against Booth were dismissed after a preliminary hearing in Criminal Court on May 27, 1968 at which Hunter stated he could not positively identify Booth.

. Appellant Harle allegedly told the police that Hunter had come over to him and asked for a drink. Since the District Attorney stated that he did not intend to use the statement at trial, the court dismissed the motion to suppress it as academic and the issue is no longer in the case.

. It should be noted that absent these alleged errors at the suppression hearing, appellants make no claim that probable cause did not exist or that the motion to suppress was improperly denied.