Irving Lang, J.
The defendant, charged with rape in the first degree (Penal Law, § 130.35), rape in the third degree (Penal Law, § 130.25), and possession of a weapon as a felony (Penal Law, art 265), moves for a dismissal of the indictment on the grounds that a transcript of a preliminary hearing relating to the instant indictment is not available to him for use at trial, thereby depriving him of "a fair trial and due process of law.”
In the alternative, defendant moves that any witness who testified at the preliminary hearing be barred from testifying at trial.
On September 14, 1973, defendant was arrested on the complaint of Rosie Pellot, charged with rape and possession of a weapon. On September 17, 1973, a preliminary hearing was held in the Criminal Court, New York County, during which the complaining witness testified.
Held for action of the Grand Jury, defendant Aviles was subsequently indicted. On December 17, 1973, defendant failed to appear in the Supreme Court, bail was forfeited and a bench warrant issued for his arrest. Returned to the jurisdiction of the Supreme Court in August, 1976, defendant was assigned new counsel, who promptly received from this court an order authorizing the furnishing to the defendant of a transcript of his preliminary hearing. A diligent search by the court reporter and other administrative personnel failed to find the stenographic notes and counsel has been advised that the reporter’s notes have been lost.
Defendant contends that he has an absolute constitutional right to a copy of all prior testimony of any witness who will testify against him at trial and that the failure to provide him with a copy of such testimony deprives him of a fair trial and due process of law pursuant to the Fourteenth Amendment and deprives him of his right to effectively confront and cross-examine witnesses pursuant to the Sixth Amendment of the United States Constitution and section 6 of article I of the Constitution of the State of New York.
In recent years there has been a proliferation of both *3 statutorily mandated and constitutionally required pretrial testimonial hearings. In addition to preliminary hearings to determine whether there is probable cause to hold a defendant for Grand Jury action or trial, there are Grand Jury proceedings, and motions to suppress physical evidence, statements, identifications and intercepted communications.
Transcripts of these proceedings are often most useful to defense counsel for impeachment purposes, particularly when counsel is able to elicit before a jury an inconsistent statement under oath. Other documents, such as police reports, and statements of witnesses, even though unsworn, also provide important cross-examination material.
The right of defense counsel to these materials has long been recognized by both New York and Federal courts. Since, for the most part, these transcripts and documents relate to collateral issues of credibility, both New York and Federal courts hold that access to these items is not constitutionally mandated but is based primarily on policy considerations of fairness. Thus in People v Rosario (9 NY2d 286, 289) the New York Court of Appeals held that a "right sense of justice entitles the defense to examine a witness’ prior statement,” and in Jencks v United States (353 US 657) the Supreme Court of the United States explained its granting to the defense of witnesses’ statements in terms of fair standards for administration of criminal justice in Federal courts, rather than in terms of constitutional mandates.
The holding of the Supreme Court in Jencks was codified in section 3500 of title 18 of the United States Code (Jencks Act). In New York, however, there has been no specific statutory implementation of the Rosario rule. Rather, there has emerged a growing body of decisional law in New York courts, and it is upon two of these cases that defendant moves for relief in the instant case.
In support of his motion to dismiss the indictment, defendant relies on the holding in People ex rel. Hairston v Adult Detention Center (76 Misc 2d 1010, 1011). In that case, remarkably similar to this one, preliminary hearing minutes were lost. The court held that the availability of a transcript of a preliminary hearing was a "fundamental constitutional right” and that no amount of reconstruction would provide defendant with the same testimony to which he was entitled at trial. In dismissing the indictment, and in support of its position that a "fundamental constitutional right” was in- *4 valved, the court cited a number of decisions by the New York Court of Appeals: People v Zabrocky (26 NY2d 530); People v West (29 NY2d 728) and People v Peacock (31 NY2d 907). Yet, in my view, the court in Hairston misconstrued the nature of the "fundamental constitutional right” to which our highest court referred in the above and other cases.
The "fundamental constitutional right” alluded to relates to the equal protection clause of the Constitution rather than the confrontation clause. In other words, equal protection of the law dictates that a poor defendant should not be deprived of the minutes of a pretrial proceeding which more affluent defendants could afford (see People ex rel. Cadogan v McMann, 24 NY2d 233, 235-236).
Thus in People v Zabrocky (26 NY2d 530, 536, supra), while holding that indigent defendants were not entitled to daily copy of trial minutes, the Court of Appeals reversed a conviction because the defendant was denied the minutes of a pretrial suppression hearing. "We have held that indigent defendants have a constitutional right to free transcripts of preliminary hearings (People v. Montgomery, 18 N Y 2d 993) and to minutes of a prior trial or of the Grand Jury (People v. Ballott, 20 N Y 2d 600) * * * 'The Montgomery-Ballott rules must, as a matter of logic and fairness, also extend to the minutes of pretrial suppression hearings’ ”. (Emphasis supplied.)
In People v West (supra, p 729), where the trial court denied assigned counsel minutes of a pretrial Huntley (statements) hearing, the Court of Appeals reversed and held that "The right of indigent defendants to a free transcript of a pretrial suppression hearing is a fundamental constitutional right”. (Emphasis supplied.)
In People v Sanders (31 NY2d 463, 466) a case involving the denial of a motion to suppress physical evidence, Chief Judge Fuld stated: "We have consistently held that an indigent defendant has a 'fundamental constitutional right’ to a free transcript of the minutes of a pretrial suppression hearing and that its denial requires a reversal of the judgment of conviction, even though no prejudice be shown and '[rjegardless of the nature and quantum of proof against’ him.” (Emphasis supplied.) Recognizing the administrative burden involved, however, the court in Sanders indicated that the defendant should make his request for minutes of any pretrial hearing prior to its conclusion.
*5 People v Peacock (31 NY2d 907) cited in Hairston held (4 to 3) that when an identification hearing was held just prior to trial it was error to deny an indigent defendant the minutes of that hearing since the majority indicated that the stenotype notes were no substitute for a transcript in hand.
Absent any showing of specific prejudice or any deliberate act on the part of the government to deprive a defendant of "Rosario” material, I find no statute or appellate case law authorizing the dismissal of an indictment because of the good faith, negligent loss of such material. Nor can I perceive any sound public policy which would be served by such an act.
The second branch of defendant’s motion seeks to have the complainant and any other witness who testified at the hearing barred from testifying at the trial.
In this connection counsel cites the case of People v Lunney (84 Misc 2d 1090).
After defendant Lunney was indicted for murder, the stenographic minutes of the Grand Jury proceedings, ready to be typed, were lost when an employee of the District Attorney left them on a train. Following the loss, the case was represented to another Grand Jury and a superseding indictment was filed.
Ruling on a motion to dismiss, the court in Lunney (supra, p 1093) declined to follow Hairston, holding that since constitutional questions were not involved, "the court is reluctant to invoke the drastic remedy of dismissal of the indictment.” However, the court indicated that since the Grand Jury testimony was "irremedially lost,” [sic] no resubmission could cure the defect since the witness "has a perfect opportunity to 'edit’ or 'amend’ his testimony”. Seeking a "remedy” other than dismissal, and apparently unable to find one in New York statutory or case law, the court applied a Federal Jencks Act sanction as the "only acceptable remedy” and "barred and excluded” testimony of all witnesses who testified before the first Grand Jury (pp 1094-1095).
The particular provision of the Jencks Act invoked by the court in Lunney (US Code, tit 18, § 3500, subd [d]) provides that if the government does not deliver prior witnesses’ statements, "the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court * * * shall determine * * * that a mistrial be declared.”
It is important to note that the Judge in Lunney (supra, p *6 1094) found no intention on the part of the prosecutor to suppress the minutes. It was, said the court, a "good faith negligent loss”.
Again, there was no finding by the court of any specific prejudice to the defendant.
Apparently the court in Lunney (supra, p 1094) was attempting to strike a reasonable balance between the "drastic remedy of dismissal” and no sanction at all. "Our tort law awards relief for the victim of almost any negligence. Can the rule of law be less when the issues involved concern liberty rather than money or property? Obviously not.”
While in my view such facile analogies more often obscure than illuminate, even under tort law damages for negligence must be proven, not speculative. Remedies must be for real injuries, not merely hypothetical or possible.
Nor can we readily assume that a witness would avail himself of the "perfect opportunity to 'edit’ or 'amend’ his testimony” merely because he is aware that there are no transcripts of his previous Grand Jury evidence. How could the witness be certain that the minutes would never be found? Furthermore, in the ordinary course of events a Grand Jury witness would have been interviewed by both police and District Attorneys before testifying. Notes of these interviews are "Rosario” material which are available to the defense after direct examination of the witness on trial. Even though original transcripts had been lost, a witness might still think twice about changing his story when at least 16 grand jurors, an Assistant District Attorney and a court stenographer were present at his initial sworn testimony.
Again, while the court in Lunney imposed a Federal sanction under the Jencks Act, it is significant to me that no Federal appellate court has resorted to or permitted the invocation of this remedy in comparable situations. The Supreme Court of the United States in United States v Augenblick (393 US 348) indicated that while sanctions should be imposed on the government for bad faith suppression of evidence, they are not appropriate where the loss was in good faith.
The general rule in the Federal courts is that sanctions will not be imposed "where the loss was inadvertent and not deliberate or in bad faith, and there was not such prejudice to the defendant as to deny him a fair trial.” (United States v Miranda, 526 F2d 1319, 1327, and cases from other circuits *7 cited therein; see, also, United States v Augello, 451 F2d 1167, cert den 405 US 1070.)
None of the Federal cases cited by the court in Lunney permitted suppression under the Jencks Act.
In United States v Perry (471 F2d 1057, 1063) as in Lunney, Grand Jury minutes of a witness were lost by an agent of the United States Attorney. The District Court suppressed the testimony of the witness under the Jencks Act. However, the United States Court of Appeals reversed and remanded the case back to the District Court to determine the risk of prejudice to the defendant balanced against any culpability of the government. As that court stated:
"if the judicial process be viewed as an adversary game, then the failure of the Government to produce the previous statement of a witness results in an automatic penalty to the Government, denial of the use of its witness, just as in a football game offensive holding automatically results in a fifteen-yard penalty.
"Viewed in its proper perspective, the judicial process is a search for truth, not an adversary game, and therefore the Jencks Act is not a mandate compelling the trial judge to strike (or bar) a witness’ testimony when a previously made statement, irrespective of the reason, cannot be produced by the Government.”
Also, in United States v Carpenter (510 F2d 738) quite similar to the case at bar, the Circuit Court affirmed a refusal to dismiss the indictment when a taped preliminary hearing was accidentally erased and there was no showing of prejudice.
Finally, in the most egregious case cited in Lunney, United States v Bryant (439 F2d 642, 653 [Bryant I]), the Circuit Court remanded a case back to the District Court where a tape recording of a crucial conversation between defendants and an undercover narcotics agent was unaccountably lost with directions to "weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice.”
Despite the fact that the evidence involved was directly probative of guilt or innocence on the direct case (as opposed to mere cross-examination material) the District Court on remand upheld the conviction as did the Circuit Court in *8 United States v Bryant (448 F2d 1182 [Bryant II]), although the negligence of the agent was "regrettably great.”
There are of course occasions when the negligence of the government in losing documents or evidence so prejudices the defendant that he cannot get a fair trial. In those situations the prejudice is so great that the truth seeking process which is the goal of any trial is thwarted and justice requires that sanctions, even dismissal, must be imposed. People v Churba (76 Misc 2d 1028) is such a case and perhaps Bryant was. But that was not in my opinion the situation in Lunney or here.
Suppression of relevant and probative testimony is ordinarily a hindrance to the search for truth and should only be utilized to justify overriding considerations of public policy and constitutional guarantees.
Suppression must be denied when no statutory or constitutional rights are violated and when no prejudice or bad faith is manifest.
There are differences between the preliminary hearing here and the Grand Jury proceedings in Lunney. In the instant case the loss was occasioned by a court employee and in Lunney by an employee of the District Attorney’s office. The difference, however, is more surface than real. Both are governmental agents. Indeed, contrary to popular belief, the Grand Jury is an arm of the court and not of the District Attorney (see CPL art 190). To say that in the two situations suppression should be granted when the stenographer happens to work for the prosecutor and suppression denied when the stenographer is a court employee defies reason.
Another distinction derives from the nature of the proceedings. Preliminary hearings are adversary proceedings, attended by both the District Attorney and defense counsel, where the witnesses are both examined and cross-examined. A Grand Jury is secret; only the District Attorney is represented, and he generally is the only interrogator. It could be argued that if minutes of a preliminary hearing are lost, at least the defense counsel could question the witness at trial with respect to any alleged contradictions or could take the stand himself to recount his recollections of the witness’ previous testimony. On the other hand, it could also be argued that District Attorneys usually keep questions in the Grand Jury as short and concise as possible so that Grand Jury testimony is often not as valuable as testimony which has been tested by cross-examination. Nor can we presume that a *9 District Attorney would overlook his ethical obligations to bring to the attention of the defense any inconsistencies in the statements of his witnesses.
All in all, the differences between preliminary hearings and Grand Jury presentations are not sufficiently significant to warrant different treatment when minutes of these proceedings are lost.
Another problem created by the Lunney decision is the not infrequent occasion when a major witness for the People testifies in the Grand Jury solely regarding a minor aspect of the case. For example, it is not rare for a detective to testify with respect to the circumstances of an identification or an apprehension and not be asked anything about a full confession he has witnessed. If the minutes are lost, is the detective to be barred from testifying about a subject which was not the subject of a single question in the Grand Jury? Or should there be yet another pretrial hearing to ascertain what he testified to or did not testify to, and bar the former and admit the latter?*
Despite the fact that there is an obvious paucity of appellate law on this specific subject, cases in related areas preclude suppression as the appropriate remedy. When, for example, an entire trial transcript is lost or unavailable, a defendant who is thereby deprived of his right to appeal is generally entitled to a new trial (People v Hill, 43 AD2d 563; People v Poole, 41 AD2d 699; People v Auth, 43 AD2d 790; People v Sanders, 45 AD2d 686; but cf. People v Flynn, 53 AD2d 816; People v Bell, 36 AD2d 406). No appellate court has ever ordered a new trial and concomitantly, where minutes were lost, ordered that the witnesses at the original trial be prohibited from testifying at the new trial.
Recently in People v Rivera (39 NY2d 519, 521) the New York Court of Appeals held that a defendant who had been resentenced nunc pro tune to recommence the running of his time for appeal was entitled to a new trial where the original trial minutes were unobtainable "and no alternative sources for perfecting his appeal or for demonstrating appealable issues any longer exist.” Interestingly enough, the court *10 seemed to indicate that a reconstruction was a legitimate means of handling the issues but that since the defense counsel had been disbarred and could not be located, the Judge was deceased and the prosecutor had suffered a stroke, a new trial was the only solution.
Is, however, the defendant entitled to any relief? In People v Hicks (85 Misc 2d 649), the court held that where preliminary hearing minutes were lost the defendant was entitled to a reconstruction hearing, i.e., another preliminary hearing. It seems to me that the necessity or advisability of another hearing is dependent on the nature of the pretrial proceedings. Thus in motions to suppress physical evidence, identification, statements and intercepted communications, a reconstruction hearing is essential since the determinations of these proceedings are subject to appellate review and the record of such hearings is often vital to the appellate process. Grand Jury minutes are subject to review by a trial court for legal sufficiency and ordinarily if they are missing before trial, a new presentation is required. With regard to preliminary hearing minutes which are not ordinarily subject to appellate review, whether or not their loss requires another preliminary hearing should be left to the sound discretion of the trial court, which should consider such things as the availability of other discovery materials and the need to expedite the disposition of cases.
In the instant case I hold that the bail jumping by the defendant which may have caused a delay contributing to the loss, combined with the availability of Grand Jury testimony, precludes the need for another hearing and another set of minutes for the purpose of eliciting potential impeachment testimony. Although Rosario indicates that witnesses’ statements are to be turned over after the witness testifies on direct examination on trial, I rule that in the light of the lost minutes, the District Attorney must turn over to defense counsel, prior to trial, all Grand Jury testimony, all police records and all of the prosecutor’s own records relating to statements of witnesses in the instant case.
This seems to me the extent of the relief to which the defendant is entitled. Of course, it would have been preferable for the minutes not to have been lost. However, in the words of Judge Fuchsberg in Rivera (39 NY2d 519, 523, supra) "For, in this imperfect world, the right of a defendant to a fair appeal, or for that matter a fair trial, does not necessarily *11 guarantee him a perfect trial or a perfect appeal.” Damnum sine injuria esse potest — There may be injury without injustice.
In sum, I find that the constitutional, statutory and policy considerations which preclude dismissal of an indictment where pretrial minutes are lost without any showing of bad faith or actual prejudice to the defendant apply with equal force to suppressing testimony of pretrial witnesses. I find no substantial difference between killing the prosecution and crippling it.
The motion to dismiss is denied.
The motion to suppress is denied.

 Still another problem is the uncertain avenues available to the People to challenge an exclusion order. A dismissal can be appealed, but exclusion is an interlocutory order. Is it appealable or perhaps should it be the subject of an article 78 proceeding? Actually, in Lunney, the case was disposed of by plea bargain while a motion to reconsider was pending.