Octavio LOPEZ, Petitioner,

v.

The CRIMINAL COURT OF the CITY OF NEW YORK, Respondent.

No. 83 Civ. 1488.

United States District Court, S.D. New York.

June 29, 1983.

William E. Hellerstein, The Legal Aid Soc., New York City, for petitioner; Ronna Brown, New York City, of counsel.

Robert M. Morgenthau, Dist. Atty., New York County, New York City, for respondent; Norman Barclay, Clara S. Licata, Asst. Dist. Attys., New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Petitioner, a licensed cab driver, convicted of assault in the third degree in the Criminal Court of the City of New York, seeks a writ of habeas corpus to void the judgment of conviction pursuant to 28 U.S.C., section 2254, on the ground that the Double Jeopardy clause of the Fifth and Fourteenth Amendments to the United States Constitution barred his retrial after the trial judge on the first trial recused herself on the prosecution's motion.[1]

Petitioner's trial commenced as a bench trial before a judge of the Criminal Court upon his waiver of a jury trial. Upon the conclusion of the first trial day, after two of four witnesses had testified in the prosecution's case, an off the record conference was participated in by the judge, the Assistant District Attorney and defense counsel. Upon resumption of the trial several days later, the Assistant District Attorney, based upon the off the record conversation, opined that "your Honor may be unable to hear the evidence with an open mind . . ." and asked that the Court "excuse herself." Thereupon a colloquy ensued as to what had been said at the off the record session with some differences of recollection on the part of the participants. However, what is not in dispute is that the trial judge at the prior session then expressed her view that the People had failed to make out a case beyond a reasonable doubt and that she had questioned the credibility of the People's two witnesses. She also made a reference that the defendant might lose his license as a cab driver in the event of a conviction. What the judge did exactly say on this subject is somewhat in dispute. The prosecutor's recollection was "that your Honor also stated that she would feel compelled to bear in mind the fact in a possible conviction in this case would affect the defendant's future as a cab driver because he stood to lose his hack license." Defense counsel's version was that the parties had "discussed the case very lightly and there were certain points that were brought up but I don't think they would in any way influence your Honor insofar as the progress of this trial is concerned." The discussion continued, and so that there may be no doubt as to what transpired before the trial judge granted the prosecution's motion for a mistrial, we quote precisely from the record:

THE COURT: I did make reference, and sometime I regret talking to lawyers but I did indicate that not that I did not find the witness credible but I did indicate that I did have a soft heart, soft spot for a defendant, the possibility of his losing his license. Under the circumstances, the District Attorney is right. I did make reference to it and she has an absolute right to request the Court to excuse herself.

MR. REO [Defense Counsel]: Your Honor, I was listening and I don't believe you said that. We discussed it very lightly. You said to the District Attorney, "Do you realize he would lose his license." You didn't say it would influence you.

THE COURT: I can't tell you what my exact words were. I don't remember.

1. Subsequent to the mistrial declaration, petitioner moved to dismiss the accusatory instrument against him on double jeopardy grounds. The motion was denied. *People v. Lopez*, 106 Misc.2d 1015, 437 N.Y.S.2d 37 (Sup.Ct.N.Y.Co. 1981). Thereafter, a second bench trial commenced at the conclusion of which petitioner was found guilty of third degree assault and was sentenced to 60 days incarceration and 34 months probation. The petitioner appealed his conviction to the Supreme Court, Appellate Term, First Department, raising in part his claimed violation of his double jeopardy protections. A divided panel affirmed the conviction, *People v. Lopez*, No. 82–233 (App.Term, 1st Dep't Oct. 1981) (per curiam), and leave to appeal to the Court of Appeals was denied. Execution of the sentence was stayed by the state courts and upon the filing of this petition a further stay was granted by this Court pending disposition.

Whether or not the fact that this man, the possibility of the man losing his hack license would influence me I decline to answer that. I think I said too much on Friday. The District Attorney has requested that I excuse myself and I am going to excuse myself from this trial.

. . . .

THE COURT: At the request of District Attorney, based on conversations with attorneys at the end of Court today [sic], this Court did indicate to counsel that the Court based on testimony up to date that the District Attorney probably did not make a case beyond a reasonable doubt and, in addition, indicated to attorneys that and in addition questioned the District Attorney as to the possibility of the defendant losing his hack license, if convicted.

This may appear to the District Attorney that this Court was prejudiced, which it is not, but to avoid impropriety and questions by the Appellate Division, this Court on application of District Attorney excuses itself and mistrial is declared.

Since the issue of bias or prejudice of the fact finder concerns the trial judges' state of mind, the Court accepts her version as to the statements made by her. So viewed, the totality of her statements, despite the volunteered declaration that she was not prejudiced, permits the contrary as a reasonable inference.[2]

■ While a defendant has a valued right to have his trial, once commenced, completed by a particular tribunal, that right "must in some instances be subordi-

nated to the public's interest in fair trials designed to end in just judgments"[3] by affording the prosecution one full and fair opportunity to present evidence to an impartial jury or judge as the fact finder.[4] There must be manifest necessity for a declaration of a mistrial. The need to avoid defeating the interests of public justice constitutes manifest necessity. In Mr. Justice Story's classic statement: ". . . the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."[5] The right to the disinterested objective judgment of the trier of the fact applies to all litigants to a controversy, the prosecution no less than the defense.[6]

■ The petitioner stresses that the trial judge noted that while it "may appear to the District Attorney that this Court was prejudiced, it was not, . . . ." However, this subjective statement meets a sharp challenge from the trial judge's acknowledgment of three facts:[7] (1) that at the off the record conference, before the prosecution's remaining two witnesses were to be heard, she stated her view that the two who had already testified were not credible and that probably the People had failed to establish guilt beyond a reasonable doubt; (2) that she had a "soft heart, soft spot for a defendant, the possibility of his losing his license"; and (3) rather significantly, since her impartiality had been questioned that as to "the possibility of the man losing his

---

2.  *Cf. Dyer v. MacDougall,* 201 F.2d 265, 269 (2d Cir.1952) (L. Hand, J.).

3.  *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949) (*quoting Arizona v. Washington,* 434 U.S. 497, 503 n. 11, 98 S.Ct. 824, 829 n. 11, 54 L.Ed.2d 717 (1978).

4.  *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

5.  *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

6.  *Snyder v. Massachusetts,* 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934) (Cardozo, J.); *St. Lawrence v. Scully,* 523 F.Supp. 1290,

1298 (S.D.N.Y.1981), *aff'd on opinion below,* 697 F.2d 296 (2d Cir.1982).

7.  In the most recent decision by the Supreme Court as to when double jeopardy becomes operative, Mr. Justice Powell, in his concurring opinion, noted that "[b]ecause 'subjective' intent often may be unknowable . . . a court—in considering a double jeopardy motion—should rely primarily upon the objective facts and circumstances." *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 2092, 72 L.Ed.2d 416 (1982).

license would influence me, I decline to answer that."

If in a case tried to this Court a juror had made any one of those statements during the progress of the trial, this Court, sua sponte and without hesitancy, would have declared a mistrial on the ground of the juror's evident lack of impartiality. And even if the juror, upon inquiry, had asserted, as the trial judge did here, that despite the one or more statements attributed to her she was not prejudiced and could fairly continue to serve and decide the issues, this Court would not be bound to accept that subjective assessment of impartiality in the light of the objective factors which pointed in the opposite direction.[8] Invariably, this Court, in preliminary instructions to jurors prior to the taking of testimony, cautions them that since the evidence in the case can be presented only step by step and that while they may have impressions of a witness' credibility, they must not allow these to become fixed or firm, for to do so would foreclose fair evaluation of the totality of evidence, including testimony that may come from subsequent witnesses; also, jurors are instructed that in the event the evidence warrants a conviction, the matter of sentence that may be imposed by reason thereof must not enter into or influence their determination on the basic issue of guilt or innocence. Clearly the trial judge's concern with the prospect of the defendant losing his license if the evidence upon the entire case warranted a verdict of guilty reflects that sympathetic considerations might well have been injected into the fact finding process. Indeed, her volunteered declination to state, in the light of the challenge to her objectivity, whether "the possibility of the man losing his hack license would influence" her judgment speaks far more than her assertion of nonprejudice.

Moreover, the judge, by her very action in declaring a mistrial, indicated manifest necessity for a new trial before a different and unbiased fact finder and that the overall interests of justice required it. Manifest necessity reflects the public interest that all parties, prosecution and defense alike, be afforded a fundamentally fair trial at which the disputed fact issues are decided by an impartial and objective fact finder. "Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, 'the public's interest in fair trials designed to end in just judgments' must prevail over the defendant's 'valued right' to have his trial concluded before the first jury impanelled."[9] In the light of the circumstances here presented, the only way such a trial could be had was before a new fact finder—one free from bias, prejudice or sympathy for a defendant.

The fact that, as petitioner contends, the trial judge in declaring the mistrial did not formally make an explicit finding of manifest necessity is not of constitutional significance.[10] The act of recusal itself reflects such a finding. The trial judge was vested with a broad discretion in deciding whether or not manifest necessity justified another trial before a different fact finder and her decision is entitled to great deference.[11] What it clearly denotes is, even accepting her statement of lack of prejudice, that the situation created by her statements at the off the record session raised a substantial doubt as to her impartiality, and the public interest in the fair and impartial administration of justice required the declaration of a mistrial.

8. *St. Lawrence v. Scully,* 523 F.Supp. 1290, 1299 (S.D.N.Y.1981), *aff'd on opinion below,* 697 F.2d 296 (2d Cir.1982) ("The 'impartiality [of a juror] is not a technical concept. It is a state of mind.' The state of one's mind requires a fact determination as does the state of one's digestion. This determination involves an evaluation of a variety of factors and all the surrounding circumstances and the fair inferences to be drawn therefrom. The trial judge was not bound to accept at face value the juror's expurgatory statement.") (footnotes omitted).

9. *Arizona v. Washington,* 434 U.S. 497, 516, 98 S.Ct. 824, 836, 54 L.Ed.2d 717 (1978).

10. *Id.* at 517, 98 S.Ct. at 836.

11. *Id.* at 509–10, 98 S.Ct. at 832–833.

Here the shortcomings of the aborted trial were entirely the product of the trial judge's statements. The prosecution played no part in events that raised the issue of the court's impartiality and resulted in the mistrial. However ill advised the trial judge's statements were, clearly they were not intended to provoke a mistrial;[12] to the contrary, they indicated bias and sympathy toward the defendant, which led the prosecution to question the trial judge's impartiality and to move for a mistrial. Under all the circumstances, her judgment should not be disturbed since the public interest in fair trials supports her action.

Finally, while, as noted, the Court is satisfied that a finding of bias and sympathy favorable to the defendant is warranted by the totality of the record, there can hardly be any question that the judge's acknowledged statements require a further finding that the appearance of her impartiality could reasonably be questioned. Federal law now requires that a Justice "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[13] Similarly, Canon 3(C) of the ABA Code of Judicial Conduct requires a judge to recuse himself or herself where impartiality "might be reasonably questioned." State law is of equal import.[14]

We conclude with the enduring statement of Mr. Justice Black in *In re Murchison:*[15]

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.... [T]o perform its high function in the best

way "justice must satisfy the appearance of justice."

The petition for a writ of habeas corpus is dismissed.

So ordered.

**12.** *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

**13.** 28 U.S.C. § 455. *See United States v. Ferguson,* 550 F.Supp. 1256, 1260 (S.D.N.Y.1982).

**14.** *See Corradino v. Corradino,* 48 N.Y.2d 894, 424 N.Y.S.2d 886, 400 N.E.2d 1338 (1979); *Ferlito v. Judges of the County Court, Suffolk County,* 31 N.Y.2d 416, 419, 340 N.Y.S.2d 635, 637, 292 N.E.2d 779, 780 (1972) ("the appearance of impropriety may sometimes be as devastating as the reality"); *People v. Zappacosta,* 77 A.D.2d 928, 431 N.Y.S.2d 96 (2d Dep't 1980) (courts are cautioned to "be constantly vigilant to avoid even the appearance of bias which may erode public confidence in the judicial system as quickly as would the damage caused by actual bias.").

**15.** 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (*quoting Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954).