OPINION OF THE COURT
Budd G. Goodman, J.
The defendant, Ernest Marks, has been indicted on charges of criminal sale of a controlled substance (cocaine) in the first degree, attempted criminal sale of a controlled substance (cocaine) in the first degree, and criminal possession of a controlled substance (cocaine) in the first degree.
Prior to the first sale, a confidential informant contacted the defendant on several occasions by telephone and took him, by car, from Staten Island to Washington Heights on three separate occasions.
The first sale for which the defendant was indicted was consummated December 19,1983. The second sale was arranged for January 5, 1984; at that time the defendant and two others, who ultimately pleaded guilty to some of the charges, were arrested. Mr. Marks, who has no drug-related criminal history and who never handled either money or drugs during the transaction, but merely served as a contact, elected to go to trial; he grounded his defense on a theory of entrapment.
On September 10,1984, during the trial, the People disclosed the existence of a taped telephone conversation between Mr. Marks and the confidential informant, made on December 8, 1983, 11 days before the first sale.
Listening to the tape, out of the presence of the jury, it became clear to all, including the Assistant District Attorney, that Mr. Marks had a viable entrapment defense based, in large part, on *592 the tape. The People were instructed to make a copy of the tape for defense counsel, who indicated that he planned to offer it in evidence the following day as his exhibit. The next morning the Assistant District Attorney discovered and informed the court that, instead of duplicating the tape, the officer assigned to the task had accidently erased it.
Upon hearing this, defense counsel successfully moved, over the objection of the People, for a mistrial.
On November 26, 1984, defense counsel moved, on papers, for a dismissal of the indictment on due process/double jeopardy grounds.
The People assert that, procedurally, the defendant, by moving for a mistrial, waived his right to have his motion considered on the merits, but even if the defendant has not waived his right, he is still disentitled to dismissal since the People exhibited neither bad faith nor intent to provoke a mistrial in the erasure of the tape. Moreover, the People assert, the defendant is still effectively able to present his defense. The court is unpersuaded by these assertions.
The People cite People v Michael[1] and People v Ilker[2] in support of their waiver argument. Neither case, however, is a correct statement of the law, as it applies to Mr. Marks.
In Michael (supra) the court, sua sponte, declared a mistrial, with neither consent of the defendant nor presence of defense counsel. The Court of Appeals held that “[w]here a court declares a mistrial without obtaining the defendant’s consent the double jeopardy provisions of both * * * State * * * and Federal Constitution^] prohibit retrial for the same crime unless ‘there is a manifest necessity for [the mistrial], or the ends of public justice would otherwise be defeated’ ”.[3] The court further held that where a court, prior to a vacation, declares a mistrial, for the court’s or the jury’s convenience, without inquiry into the jurors’ ability to render a fair verdict if required to remain, then “discretion falters and abuse appears.”[4] That court based its decision on CPL 280.10 (3). This case however falls not under subdivision (3), but rather under subdivision (1), which states, in pertinent part:
At any time during the trial, the court must
“declare a mistrial and order a new trial of the indictment
*593 “[u]pan motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him of a fair trial.”[5]
Ilker (supra) stands for the proposition that where a defendant consents to a mistrial and then, after the second trial, brings an appeal, where, for the first time, he raises the issue of double jeopardy, his claim is untimely and therefore has been waived. In contrast to both Michael and Ilker, Mr. Marks brought his motion prior to the second trial, thus, the issue is timely raised, notwithstanding that initial motion. Therefore, Mr. Marks has not waived his right to have his motion considered on the merits.
Having resolved the procedural issue in favor of the defendant, the court considers, next, the substantive issue of whether the People, through the behavior of their agent, the police, have deprived defendant of the opportunity to receive a fair trial. The court has found no published New York cases on point.
Defense argues first that the tape of the conversation between defendant, Ernest Marks, and the confidential informant was so central and vital to his defense of entrapment that its destruction has irreparably destroyed his ability to prove his defense and that, therefore, due process requires dismissal of all of the charges in the indictment. Further, he argues that the destruction of the tape was a deliberate act, aimed at provoking a mistrial, or, at the very least, gross negligence requiring dismissal as the only appropriate sanction against the People. The court disagrees with the defendant’s second argument.
Fairness in a criminal trial requires that “ ‘available evidence tending to show innocence, as well as that tending to show guilt, be fully aired before the jury’ ”.[6] If it is true that the purpose of a trial is a search for the truth,[7] then the ultimate determination by the jury should be based on all the relevant evidence. “[Suppression by the prosecution of evidence favorable to an accused * * * violates due process where the evidence is material * * * to guilt * * * irrespective of the good faith or bad faith of the prosecution.”[8] This rule has been interpreted as placing upon *594 the Government a correlative duty to preserve such material evidence.[9] Although it may be true, in some cases, that damnum sine injuria esse potest[10] (there may be injury without injustice) as the People here claim, it is also true that there are times when the Government’s negligence “in losing documents or evidence so prejudices the defendant that he cannot [receive] a fair trial. In those situations the prejudice is so great that the truth seeking process which is the goal of any trial is thwarted and justice requires that sanctions, even dismissal, must be imposed.” [11]
Both fairness and due process require that all evidence which “ ‘might have led the jury to entertain a reasonable doubt about [defendants’] guilt’ ”[12] must be disclosed. On this issue one of the leading Federal cases upon which the People rely is United States v Bryant,[13] where the court held that “[t]he purpose of the duty is not simply to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government.”[14]
Destruction of evidence material and necessary to the determination of guilt or nonguilt in a trial, whether destroyed in bad or good faith, corrupts the truth seeking function of the trial. The proper focus of the test is upon “the ultimate possibility of harm to the defendant.”[15]
In Bryant, the United States Court of Appeals found that there was no possibility that the lost tapes would be found and that “[a] new trial would be simply a repetition of the first trial, similarly infected by non-disclosure of discoverable evidence.”[16] *595 The same is true here. The fact that the existence and content of the tape has been disclosed to the court and only subsequently destroyed is of no moment. The defendant has been denied the use, at trial, of an important piece of substantive evidence and any new trial would be “similarly infected”.[17]
Therefore, the People’s reliance upon Bryant (supra) is misplaced, as is their reliance on People v Kelly[18] In Kelly, the defendant took a one dollar bill protruding from a decoy’s pocket. The defendant’s “dubious”[19] entrapment defense was that the one dollar bill had been doctored to look like a 20 and the police’s property department, following ordinary procedures in decoy cases, had immediately returned the money to the decoy, thus destroying his entrapment defense. The court said that although the intentional relinquishment of the property was inexcusable, the return of such property in decoy cases is a general practice which may “demonstrate the absence of * * * intent to harm [the] defendants, it falls far short of satisfying the People’s burden of establishing that they are not accountable for the loss.”[20] The question in Kelly was what sanctions, if any, were necessary under the facts. “In fashioning an ‘appropriate’ response to the prosecution’s wrongful failure to preserve evidence [the court held that] the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society.”[21] The court found invalid the defendant’s argument that his case was irreparably damaged by the unavailability of the property.
The case at bar, of course, differs from Kelly (supra) in that the court has found that the entrapment defense here is not at all “dubious” but, in fact, a viable one.
The double jeopardy clause of the 5th Amendment guards the interest of the criminal defendant in avoiding more than one trial, even where no final determination of guilt or nonguilt has been reached.[22] Society’s interest is not only in convicting the guilty; the interest is rather “in fair trials designed to end in just judgments.”[23] As Mr. Justice Black stated in Green v United States: “The underlying idea [of the double jeopardy clause] one *596 that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.”[24]
United States v Dinitz[25] is the seminal case which affirmed that a mistrial granted upon a criminal defendant’s motion, because of prosecutorial or judicial error, will not normally foreclose a second trial. The trial court in Dinitz had barred defense counsel from the courtroom for repeatedly defying its orders; substitute defense counsel consented to a mistrial — that being one of three alternatives offered by the court. Prior to the second trial, defendant’s double jeopardy motion was denied. The Supreme Court held that in this case the double jeopardy clause did not bar retrial since there were less drastic alternatives to dismissal available. If, however, defendant’s motion for a mistrial had been provoked intentionally by the prosecutor or the Judge, then retrial would be proscribed by the double jeopardy clause.
In Oregon v Kennedy,[26] the prosecutor, in an attempt to rehabilitate a witness, asked the witness if his reason for not doing business with the defendant was because the defendant was a “crook”.[27] A mistrial motion was granted on the ground that the statement was prejudicial to the defendant. The court refined the Dinitz (supra) doctrine when it held that “[a] defendant’s motion for a mistrial constitutes ‘a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of the fact.’ ”[28] Therefore, under Federal law, where a criminal defendant has successfully moved for a mistrial, the double jeopardy bar can be interposed only where “the conduct giving rise to the * * * motion * * * was intended to provoke the defendant into moving for a mistrial.”[29] However, Mr. Justice Brennan, in his concurrence in Kennedy, indicated that nothing in that holding would prevent State *597 courts from concluding that retrial would violate the double jeopardy provision of the State Constitution.[30]
Under New York State’s due process clause,[31] “this court may impose higher standards than those held to be necessary by the [United States] Supreme Court under the corresponding Federal constitutional provision”.[32]
Although some courts in this State have followed the Federal law,[33] this court does not believe that the boundaries drawn and *598 enunciated by the Supreme Court in Kennedy (supra) sufficiently served to protect the defendant in this case.[34] Therefore, the court will decide this case under New York State’s Constitution and controlling case law.
In People v Isaacson,[35] the Court of Appeals explained that: “‘“due process”, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances’[36] * * * It embraces fundamental rights and im *599 mutable principles of justice[37] * * * and use of the term is but another way of saying that every person’s right to life, liberty and property is to be accorded the shield of inherent and fundamental principles of justice[38] [It] guarantees respect for personal immunities ‘so rooted in the traditions and conscience of our people as to be ranked as fundamental’[39] * * * It imposes upon courts the duty to foster ‘ “that fundamental fairness essential to the very concept of justice” ’ ”.[40]
The Court of Appeals, in People v Szychulda,[41] held that where a trial court issues a subpoena duces tecum and the People fail to produce the appropriate papers, the court correctly dismisses the case, in the interest of justice, if the defendant cannot defend without them.
In People v Lunney,[42], where Grand Jury minutes had been irremediably lost, the trial court held that dismissal was the only solution not violative of due process, the good or bad faith or the extent of the negligence of the prosecution being irrelevant. It is not this court’s intention to “inflict retribution”[43] upon the District Attorney’s office for the police officer’s mistake, its sole intent is to insure defendant fairness[44] and due process. In the opinion of this court, other less drastic alternatives to dismissal, such as reconstruction or limiting instructions, would be insufficient to remedy the damage done the defendant by the erasure.
In light of the above cases, the court concludes that the double jeopardy bar may be interposed successfully where a defendant has been irremediably damaged by the actions of the prosecution, irrespective of good or bad faith, negligence in any degree, or even an honest mistake on the part of the People[45] or any of their agents, therefore, the court need not, in this case, reach the issue of the People’s intent.
The affirmative defense of entrapment is based on “the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed *600 offense”[46] when other facts establish a legally sufficient justification for the proscribed acts. Thus, a defendant establishes a lack of criminal culpability when he sustains his burden after raising this defense. Mr. Marks has been irreparably denied the opportunity to do just that. The significance of the tape “looms large” since, if available, it would have shown that the informant, who we know was acting at the behest of the police, cajoled and pressured Mr. Marks into arranging a meeting between himself and the other two men; its unavailability deprives both the defendant and the jury “of relevant, and perhaps highly exculpatory, evidence important to the resolution of the critical factual and legal questions on which this prosecution rests.”[47] Even if a retrial were ordered, the defendant would be in the same defenseless position in which he now finds himself, in that, but for the destruction of the tape, the defendant would have had a viable entrapment defense, which defense was irreparably destroyed along with the tape itself. Therefore, it is the holding of this court that where a mistrial has been declared, on defendant’s motion and where the defendant’s right to due process and a fair trial have been thwarted in such a manner and to such an extent as to preclude the possibility of a new trial, it is irrelevant whether the People acted in good faith or bad faith, negligently, or merely made a mistake; the double jeopardy clause of New York’s Constitution requires dismissal of the indictment — not to sanction the People — but rather because protection of the defendant’s fundamental constitutional right to due process and a fair trial is the court’s ultimate and paramount consideration.
Pursuant to New York’s law, this court finds that, all other alternatives being manifestly inadequate, the indictment must be dismissed.
Accordingly, the defendant’s motion is granted and the indictment is dismissed as to all counts.

. People v Michael, 48 NY2d 1 (1979).

. People v Ilker, 81 AD2d 645 (2d Dept 1981).

. People v Michael, supra, at p 9, citing United States v Perez, 9 Wheat [22 US] 579, 580; emphasis added.

. People v Michael, supra, at p 11; see also, Hall v Potoker, 49 NY2d 501, where case was decided on ground of abuse of court’s authority to declare a mistrial; see, CPL 280.10 (3).

. This duty exists even when there has been no request. (People v Michael, supra; see also, Paul v Henderson, 698 F2d 589 [2d Cir 1983].) The defendant can raise the issue at any time prior to the conclusion of the second trial (cf. People v Saponara, 94 Misc 2d 936 [1978]).

. United States v Pollock (417 F Supp 1332, 1344 [US Dist Ct, D Mass 1976]). The District Court found that, not only had bad faith been shown by the Government, but also, alternatives to dismissal of indictment were inadequate; the case was dismissed on both grounds (see also, Brady v Maryland, 373 US 83 [1963]).

. Supra.

. Brady v Maryland, 373 US 83, 87 (1983), supra; United States v Agurs, 427 US 97; see also, People v Kitt, 86 AD2d 465.

. See, e.g., Government of Virgin Is. v Testamark, 570 F2d 1162; United States v Bryant, 439 F2d 642; Davis v Pitchess, 388 F Supp 105; People v Saddy, 84 AD2d 175; People v Richter, 102 Misc 2d 285.

. People v Aviles, 89 Misc 2d 1, 11 (1977); United States v Augenblick, 393 US 348; see also, People v Kelly, 62 NY2d 516 (1984), where evidence, irretrievably lost, was held not to have been indispensable to the defendant’s entrapment defense and, therefore, less drastic measures than dismissal could have cured any prejudice to the defendant’s retrial; the court was found to have abused its discretion in dismissing the charges; see also, People v Rivera, 39 NY2d 519; but see, United States v Carpenter, 510 F2d 738, where a taped preliminary hearing was erased accidentally and there was a showing of prejudice, dismissal was appropriate.

. People v Aviles, supra, at p 8.

. United States v Bryant, supra, at p 648.

. Supra.

. Supra, at p 648.

. Levin v Clark, 408 F2d 1209, 1212; Griffin v United States, 183 F2d 990, 993; see also, United States v Scott, 437 US 82 (1978).

. Supra, p 653.

. Supra, p 653.

. People v Kelly, supra.

. Supra, at p 520.

. Supra, at p 520.

. Supra, p 520; see also, United States v Scott, supra.

. United States v Dinitz, 424 US 600 (1976); Benton v Maryland, 395 US 784 (1969), where the Supreme Court held the clause applicable to the States through the 14th Amendment.

. Wade v Hunter (336 US 684, 689 [1949]). Cases which have interpreted and applied the 5th Amendment’s double jeopardy provision have decided that a defendant, put to trial “before a jury, may be subjected to the kind of ‘jeopardy’ that bars a second trial for the same offense even though his trial is *596 discontinued without a verdict. See Kepner v. United States, 195 U. S. 100, 128; cf. Palko v. Connecticut, 302 U. S. 319, 322-323” (p 688).

. Green v United States, 355 US 184, 187-188 (1957).

. United States v Dinitz, supra.

. 456 US 667 (1982).

. 456 US 667, 669, supra.

. 456 US 667, 676, supra; United States v Scott, 437 US 82, 93 (1978), supra.

. Supra, at p 679.

. Oregon v Kennedy, supra, at p 680.

. NY Const, art I, § 6.

. People v Isaacson, 44 NY2d 511,519 (1978); see also, Oregon v Hass, 420 US 714,719; Oregon v Kennedy, supra; see generally, Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv L Rev 489.

. Lopez v Criminal Ct. (566 F Supp 792 [US Dist Ct, SDNY 1983]). On the prosecution’s motion, a Criminal Court Judge recused herself, due to remarks she made to the effect that she had a soft spot for defendants and was concerned that this defendant might lose his hack license. Those statements, she said, could be construed as implying prejudice against the People. The District Court, citing Kennedy (supra), found no intent on the Judge’s part to “provoke a mistrial” (p 769).
In People v Gentile (96 AD2d 950 [1983]), the prosecution’s behavior was held to be tantamount to contempt of court; the indictment was dismissed.
In People v McCann (115 Misc 2d 1025 [1982]) the police failed to preserve for testing samples of the blood of the perpetrator of the crimes, who, the police believed, had also perpetrated a number of other sex offenses; the court found that the police acted in an irresponsible and negligent manner in discarding the blood scrapings, taken from the scene of the crime, without any attempt at testing them. They also had allowed the victim to wear her bloodstained slacks home and had failed to voucher them. Further, the court found that the evidence was material on the issue of guilt, since those blood samples could have been tested and the results utilized to either completely exonerate or inculpate the defendant. The court held that the prosecution should be sanctioned for the failure of the police to preserve evidence which was material and invaluable, on the issue of guilt or nonguilt; the only appropriate sanction was dismissal of the indictment.
In Petrucelli v Smith (544 F Supp 627 [US Dist Ct, WDNY 1982]), the District Court held that the defendant’s request for a mistrial was wrongfully denied by the trial court; a hearing was ordered to develop a record on the issue of the prosecutor’s motive with respect to his conduct at petitioner’s original trial. Subsequent to the hearing, the District Court held that it did not appear that he intentionally attempted to improve his chances for a conviction at a subsequent trial by causing a mistrial.
In People v Saddy (84 AD2d 175 [1981], supra), tapes of an alleged drug sale were erased, thereby hindering defendant’s agency defense; the court reduced conviction of criminal sale to possession.
In People v Davis (105 Misc 2d 409, 412 [1980]), tangible property was returned to the owner without a court order and thus, was not preserved for trial; the court dismissed the indictment, saying that the prosecution had not met its burden of establishing that the failure to preserve was neither intentional nor in bad faith. The court chastised the District Attorney’s office for unilaterally deciding what evidence would be useful to the defendant, that decision being reserved to the defense, or in areas of doubt, to the court itself. Thus, based on the facts, critical defenses, loss of evidence, and inability of the *598 District Attorney to meet his heavy burden, the court dismissed the charges on the ground that “any other sanction would be meaningless” (p 412).
In People v Emmons (99 Misc 2d 941 [1979]), the prosecution failed to preserve a door, thus undermining the defendant’s justification defense; the court instructed the prosecutor to turn over all Grand Jury testimony concerning the forcible entry, and reserved the right to impose additional sanctions at trial, including an unfavorable inference charge.
In People v Fleishman (92 Misc 2d 156 [1977]) a detective took extensive notes during a two-hour interview with the defendant and later put them in some drawer in a filing cabinet. They were never seen again. At trial the detective revealed, for the first time, that he had taken the notes. The charges, in this case, were perjury and based on the very statements the defendant had made during the interview in question; thus, the statements were the res of the charges. The loss of the only records was, therefore, critical to determination of the defendant’s guilt or nonguilt. Since the statements had been made more than two years prior to the trial, and since the court found failure to preserve the notes was gross negligence tantamount to bad faith, dismissal was warranted.
In People v Churba (76 Misc 2d 1028 [1974]), the court dismissed the chargee because of the “blatantly careless” manner in which the prosecution agents unsuccessfully attempted to preserve a television set. The court said that the defendant would be greatly disadvantaged in attempting to show that the repairs, for which the defendant billed the owner, were actually accomplished. The set had been dusted with a special powder, prior to its being brought to this repairman, so that the places which were supposed to be fixed would indicate whether or not they had been. After the incident, the set was stored under a desk in a consumer affairs office, which was subsequently burglarized, and the set stolen. Further, there were tapes of conversations between the agents and the defendant which were also missing. The court held that both would have been crucial and the loss was a direct result of the prosecution’s failure to safeguard the evidence; the dismissal was in the interest of justice (CPL 170.40). Both the District Attorney and the defense offered experts willing to testify, but the court held that such testimony would revolve around technical opinions, which would greatly disadvantage the defendant without the actual res; thus placing the defendant in an unfair position through no fault of his own. The cumulative effect of poor investigation and the loss of evidence resulted in an irreparable denial of this defendant’s right to adequate preparation for and maintenance of his own defense.

. In Paul v Henderson (698 F2d 589 [1983], supra), the court held that where the destruction of evidence totally damages defendant’s defense, the case should be dismissed, in the interest of justice.

. People v Isaacson, 44 NY2d 511, 520 (1978), supra; see also, People v Leyra, 302 NY 353.

. Anti-Fascist Comm. v McGrath, 341 US 123, 162 (Frankfurter, J., concurring).

. People v Isaacson, supra, at p 520; People v Terra, 303 NY 332, 334.

. Supra; Ives v South Buffalo Ry Co., 201 NY 271, 293, 295-296; see also, People v Yamin, 45 Misc 2d 407, 417.

. Snyder v Massachusetts, 291 US 97, 105 (Cardozo, J.).

. Supra; People v Leyra, 302 NY 353, 364, supra.

. People v Szychulda, 57 NY2d 719.

. People v Lunney, 84 Misc 2d 1090 (1975).

. Supra, at p 1095.

. People v Rosario, 9 NY2d 286.

. People v Lunney, supra; People v Aviles, supra; People v Churba, supra; cf. People v Zabrocky, 26 NY2d 530; People v West, 29 NY2d 728; People v Peacock, 31 NY2d 907; People v Sanders, 31 NY2d 463.

. United States v Russell, 411 US 423, 435 (1973).

. United States v Pollock, supra, at p 1343.